DAVID W. O. CHANG, ANNIE K. CHANG AND WALTER W. T. CHANG, CO-PARTNERS, DOING BUSINESS AS CHANG'S EXPRESS *v.* WILLIAM G. MEAGHER, JR., THOMAS R. MEAGHER, JAMES F. MEAGHER, ROBERT H. GEDE, JAMES T. GEDE AND JANE V. GEDE, INDIVIDUALLY AND AS CO-PARTNERS, DOING BUSINESS AS INDUSTRIAL DEVELOPMENT CO., AND BANK OF HAWAII (HILO BRANCH) AND BISHOP NATIONAL BANK OF HAWAII AT HONOLULU (HILO BRANCH), GARNISHEES.

NO. 2886.

ARGUED MARCH 25, 1953.          DECIDED APRIL 28, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

Plaintiffs-appellees are partners in the trucking and hauling business under the firm name of Chang's Express and have been doing business in the Territory of Hawaii for a number of years. Defendants-appellants are partners in a California partnership called the Industrial Development Company doing business in the Territory of Hawaii.

In June or July, 1948, negotiations were entered into between the copartnership, Industrial Development Com-

pany, and the Patterson Construction Company, Limited, an Hawaiian corporation, to form a joint venture for the salvage and sale of scrap within the Territory; the Industrial Development Company was represented in the Territory by one William G. Meagher, Sr., as its attorney in fact. Preliminary negotiations were entered into by the Industrial Development Company, which was represented by Mr. Meagher, Sr., and by Mr. Patterson, representing the Patterson Construction Company, in Kona in the latter part of July, 1948. There, a memorandum of agreement was signed by them on July 22, 1948, providing for the formation of a joint venture for the acquisition, disposition and sale of scrap. The purpose of the memorandum was "to reduce to writing the fact that a joint venture is *now* in effect and a complete and formal contract will supplement this memorandum agreement based upon the intent and purposes as herein expressed." (Emphasis added.)

The actual operation of salvaging scrap under this joint sponsorship began the Monday following, upon Mr. Patterson's return to Honolulu. The Patterson Construction Company was already in the scrap-salvaging business prior to the meeting between Mr. Patterson and Mr. Meagher and, according to the agreement, the scrap already owned by the Patterson Construction Company became subject to the joint-venture operations. At this time there was nothing in writing evidencing the existence of a joint venture between the Patterson Construction Company and the Industrial Development Company, salvage operations being carried on under the oral understanding (the memorandum referred to having been signed by Mr. Meagher as president of the Independent Iron Works.)

On Oahu scrap from various locations was hauled to a central base yard at Puuloa, the yard being in the name

of the Patterson Construction Company but being used by Patterson and the Industrial Development Company for the joint venture between the Patterson Construction Company and Industrial Development, which was called Patterson-Industrial. The persons supervising the joint operations were Mr. Patterson, Mr. Peters and Mr. Raymond Parks. Mr. Parks had formerly been an employee of Patterson Construction Company but became an employee as field superintendent of the joint venture from the time it commenced to operate. Mr. Peters, who had been with the Industrial Development Company, became manager of the Patterson-Industrial Company.

Plaintiff-appellee, Chang's Express, had been hauling for Patterson Construction Company prior to the formation of the Patterson-Industrial and it continued hauling throughout the months of July, August and September, 1948, and apparently the plaintiffs-appellees knew nothing of the joint arrangement between the Patterson Construction and Industrial Development. The Patterson Construction Company's office was also the office of Patterson-Industrial and charges for the hauling, including rental by appellees of their equipment to Patterson-Industrial, continued to be entered in plaintiffs-appellees' books under the name of the Patterson Construction Company and invoices for the same were billed to Patterson Construction.

It was not until September, 1948, that Mr. Chang, a partner and general manager of Chang's Express, plaintiffs-appellees, found out about Patterson-Industrial when he was directed by a Mr. Loyola, who did the ordering for jobs to be done for the Industrial Development, and Mr. Peters, to rebill certain invoices dated in August to Patterson-Industrial, not Patterson Construction Company. It was at another conference in October that Mr. Chang

presented to Mr. Peters and Mr. Parks invoices rebilled to Patterson-Industrial, as directed. At this second conference certain adjustments as to charges were made as the result of Mr. Parks' objection, and after the conference appellees again rebilled the charges as adjusted, adding one extra charge in September, as requested by Mr. Peters of Industrial Development.

In October, about the 23d or 26th, 1948, a written agreement between Industrial Development Company and Patterson Construction Company was signed, confirming existence of the joint venture known as Patterson-Industrial Development Company, such agreement purporting to take effect as of August 1, 1948.

On October 25, 1948, plaintiffs-appellees brought suit against Patterson Construction Company for hauling charges, but not those involved in the instant action. At that time they did not file suit against Patterson-Industrial as they had been assured by Mr. Peters of Patterson-Industrial that they would be paid the charges as rebilled.

Thereafter Patterson Construction Company went into bankruptcy and plaintiffs-appellees, not having received payment on account of the corrected bill charged to the joint venture, filed suit against defendants-appellants as undisclosed principals for the hauling that had been done.

Liability for the work performed was disputed on the ground that some of the invoices did not represent services performed for the joint venture.

The trial court, jury waived, found for the plaintiffs-appellees and gave judgment against appellants Industrial Development.

Appellants set forth as error the ruling of the court in the application of the adverse-witness statute, section 9847.02(1), Act 183, Session Laws of 1945, the admission

into evidence of the preliminary negotiations of the contract between those parties to the joint venture, the admission of evidence of the oral agreement made prior to the signing of the written contract by the parties to the joint venture, of the invoices as corrected, and that the decision and judgment are contrary to the law and the evidence.

Act 183, Session Laws of Hawaii 1945, provides that: "A party to the record in any civil action or proceeding or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, officers, superintendent or managing agent of any corporation which is a party to the record, may be examined by the adverse party as if under cross-examination * * *. The party calling such adverse witness shall not be bound by his testimony * * *."

Under this statute the court permitted the examination of William G. Meagher, Sr., as an adverse witness, for which the appellants claim reversible error. Meagher was the attorney in fact and territorial representative of Industrial Development Company, a California copartnership, and conducted all the negotiations in the formation of the joint enterprise on behalf of such partnership. Obviously Mr. Meagher was not a party to the record nor was he a person for whose benefit the action was brought, nor would he come within the language relative to corporation officers, superintendent or managing agent, which is a party to the record. If, therefore, he comes within the Act, it must be in spite of the fact that there is no express provision including him.

In the interpretation of a statute the cause that induced the legislature to enact it, and the reason and spirit of the law, must be considered. (Revised Laws of Hawaii 1945, § 12.)

The purpose of the particular statute before us was,

as expressed by the senate judiciary committee which made its report to the legislature under date of April 5, 1945, as follows: "Under the general rules of law a party who calls a witness vouches for the truth of his testimony. It is sometimes necessary to call the adverse party to legal proceedings as the only person having knowledge of facts which must be established, yet it is wholly unfair that his testimony should not be subject to attack as given by an adverse witness. Many of the states recognized the necessity of legislation such as that proposed by Senate Bill No. 282 and enacted such legislation long ago."

While the most desirable construction of a statute is that which is consistent with the spirit and letter thereof, both of which should be considered, frequently the purpose of an Act justifies the departure from a literal construction of the wording. One of the early decisions, *Holy Trinity Church* v. *United States,* 143 U. S. 457, in which the Supreme Court went to an extreme in holding that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. * * * This is not the substitution of the will of the judge for that of the legislator * * * ." After reviewing the title of the Act, the evil which it was designed to remedy, the situation that existed when the Act was passed, the circumstances surrounding the appeal to the Congress, reports to the Committee of the House, et cetera, it decided that the case was not within the purview of the statute though within the wording; this, though the wording covered the specific acts forbidden and though the forbidden act did not come within the specific exceptions set forth in the Act. However, this case has been severely criticized because of the extent to which it went. As said by a circuit court of appeals: "This case of the Holy Trinity Church

is now the leading federal case affirming 'that words may be * * * wrenched from their obvious meaning when a court is satisfied by sufficient evidence that the framers of the act meant, not what they said, but its opposite.' " (*In re Gardiner* [2 C. C. A.], 53 Fed. 1013, 1014.)

While the *Holy Trinity Church* case goes to an extreme in departing from literal construction and in effect adding further exceptions to the express exceptions from the Act, in general it promulgates no new rule of statutory interpretation. Many years before Chief Justice Taney had set forth this doctrine in *Brewer* v. *Blougher,* 14 Pet. 178, and there are numerous decisions of the United States Supreme Court holding that a thing which is within the intention of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers (*Jones* v. *Guaranty, etc., Co.,* 101 U. S. 622) ; "for the letter killeth, but the spirit giveth life." (Caldwell, J., in *Singer Manufacturing Co.* v. *McCollock,* 24 Fed. 667.) This, even in criminal cases where strict construction is the usual rule. *Ash Sheep Co.* v. *United States,* 252 U. S. 159, held that a statute imposing a penalty for driving any stock of "horses, mules or cattle" to a range on lands of the Indians included sheep in the term "cattle" although the ordinary meaning of the term cattle as used in America includes only beasts of the bovine genus. The court pointed out sheep were clearly within the mischief to be remedied and fairly within the language of the Act.

As stated by Chief Justice Marshall, where the whole context of the law demonstrates a particular intent of the legislature to effect a certain object, some degree of implication may be called in to aid that intent. (*Durousseau* v. *United States,* 6 Cranch 314.)

Again, in *Platt* v. *Union Pacific R. R. Co.,* 99 U. S. 48, it is laid down that in seeking the intention of Congress we may look at the paramount object which Congress had in view as well as the means by which it is proposed to accomplish that objective.

There are numerous cases that the general object, purpose and spirit of the statute are considerations entitled to weight in its construction. A few of the many early cases are: *United States* v. *Laws,* 163 U. S. 264; *Texas & Pac. Railway* v. *Interstate Com. Com.,* 162 U. S. 222; *Tennessee* v. *Union And Planters' Bank,* 152 U. S. 462; also, the Hawaiian case of *Chong Yet You* v. *Rose,* 23 Haw. 220, which states: "That which is necessarily or plainly implied in a statute is as much a part of it as that which is expressed." In this Hawaiian case, to avoid an absurdity, it was held as a necessary implication that words "from or of the vendor or mortgagor" are to be implied.

In the present case Mr. Meagher, the attorney in fact of the California copartnership doing business in the Territory of Hawaii, is "the only person having knowledge of facts which must be established" (Senate Judiciary Committee Report, *supra*) and would, therefore, clearly seem to be within the purpose and intent of the Act which is to give a party the benefit of testimony of such person connected with the adverse party and having knowledge of the facts. Clearly, neither of the copartners in California would have any knowledge of the facts which plaintiffs wished to ascertain, and while Mr. Meagher, so far as it appears, has no adverse interest, neither does an officer or agent of a corporation necessarily have an adverse interest. In each case the person so summoned as an adverse witness may have no adverse interest in fact, but his principal has, so that it would be entirely unreasonable and

an absurd construction to permit a managing agent for a corporation to come within the statute but not the managing agent of a copartnership or an individual, particularly in this case where Mr. Meagher was the° *alter ego,* so to speak, of the firm in California.

This case comes within the rules laid down in *Chong Yet You* v. *Rose,* 23 Haw. 220, *supra,* and sections 12 and 13 of the Revised Laws of Hawaii 1945.

Assuming that the witness William G. Meagher, Sr., attorney in fact of the defendants, did not come within the adverse-witness-rule statute, it does not appear that any prejudice resulted in examining him under this statute instead of as the plaintiffs' own witness, and it is elementary that the court will not set aside a judgment where no substantial prejudice results from an erroneous ruling made in the conduct of a trial. (R. L. H. 1945, § 9535; *Solomon* v. *Wong,* 34 Haw. 625, 632.) This has been applied in considering the application of the "adverse-party" statutes. (*Johnson* v. *Chicago & N. W. Ry. Co.* [Minn.], 220 N. W. 602; *Bernick* v. *McClure* [Minn.], 119 N. W. 247; *In Re McDonald's Estate* [Calif.], 215 Pac. 545, 549; *Dohrman* v. *J. B. Roof, Inc.* [Calif.], 291 Pac. 879.)

There is nothing in the record that shows the examination of William G. Meagher, Sr., was conducted in any way materially different from the way it would have been conducted had he been called as appellees' witness. Appellants assert that they were prejudiced by application of the adverse-party statute in that appellees were not bound by the testimony of William B. Meagher, Sr., and attacked his credibility. The testimony did not disclose an attack on credibility but merely connected up the fact that the witness was attorney in fact and sole manager in the Territory of Industrial Development. Such was not an attempt to impeach his credibility by general evidence of bad charac-

ter. (R. L. H. 1945, § 9845.) That his testimony could be contradicted by plaintiffs, see 3 Wigmore, *Evidence,* 3d ed., pp. 415, 417.

The defendants themselves called Meagher to the stand independently and the question of defendant's prior examination as an adverse witness was merely a question of proper order of introducing evidence, which is largely a matter of discretion for the trial court. (*Ahmi* v. *Waller,* 15 Haw. 497, 501.)

Appellants claim as error the admission into evidence of the preliminary negotiations between Patterson Construction Company and Industrial Development Company, when there was a formal final contract which is presumed to have merged all previous negotiations and agreements, which would vary the terms of the instrument purported to be executed as of August 1, 1948. If this were an action between the parties to the instrument the contention would have force; but the plaintiffs in the particular case are strangers to the instrument, in which case the rule is neither binding nor available to the strangers and may not properly be invoked by them nor against them. (32 C. J. S. § 861, Evidence, pp. 792, 794.)

Counsel for appellants, however, claim that the appellees are seeking to impose a liability upon appellants as members of the joint venture established by the terms of the August 1 agreement and thus are claiming under the contract. Appellants are seeking to impose liability on appellees by virtue of the services performed for the joint venture and the evidence is undisputed that the formal written agreement relative to the joint venture was not signed until October, 1948, long after the work had been done by plaintiffs. This agreement, signed in October, purports to take effect as of August 1, but there is evidence, and the court found, that the labor had been performed

for the joint venture prior to this time. As between the parties, they could have just as easily signed the agreement in October to take effect as of October 1 or any other date long subsequent to the performance of the services by appellants.

Likewise, there was no error in the admission of the plaintiffs' ledger sheets G, H and I. It is true that the original ledger sheet H charged the work to Patterson, but upon the direction of the officials of the defendants transfer of the various items appearing on G was made and charged to the joint venture. At a subsequent meeting various corrections were made by the parties and certain items were added at the request of Mr. Peters, manager of the joint venture. This was in substance an account stated between the parties; nor was any question raised as to the reasonableness of the charges as testified to by plaintiffs.

The exception that the decision is contrary to the law and the evidence is without merit as there is far more than a scintilla of evidence to sustain the findings of the trial court.

Affirmed.

*A. H. Ogawa* (*Levinson & Cobb* on the briefs) for defendants-appellants.

*M. Doi* (*C. Garvey, Jr., R. T. Yamaguchi* with him on the briefs) for plaintiffs-appellees.