ALFRED JENSEN, A DULY REGISTERED VOTER OF THE CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII *v.* FARRANT L. TURNER, SECRETARY OF THE TERRITORY OF HAWAII, AND LEON K. STERLING, SR., CLERK OF THE CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII; AND GILBERT OGATA, JITSUO ONO AND MASANOBU NAKASONE, THE DULY APPOINTED INSPECTORS OF ELECTIONS OF THE 25TH PRECINCT, 5TH REPRESENTATIVE DISTRICT.

NO. 3016.

ARGUED OCTOBER 28, 29, 1954.    DECIDED OCTOBER 29, 1954.

TOWSE, C. J., STAINBACK, J., AND CIRCUIT JUDGE HEWITT IN PLACE OF LE BARON, J., ABSENT.

OPINION OF THE COURT BY STAINBACK, J.

On October 29, 1954, this court filed a *per curiam* opinion sustaining the declaratory judgment of the circuit judge of the first judicial circuit of the Territory of Hawaii.

The questions before the court below were, in substance, did Act 318, Session Laws of Hawaii 1949, amend the existing election laws of the Territory so as to give qualified voters the privilege to vote for others than those duly nominated and listed on the official ballot by writing a name or names on such ballot or casting a so-called "irregular ballot" as described in such Act; and, if not, whether upon so doing must the entire ballot be rejected or only the vote for the "write-in" candidate?

The circuit judge found that a voter may not cast an "irregular" or "write-in ballot" and, if he does, not only the same may not be counted but the ballot and all the contents must be rejected and this applies in all precincts whether voting machines are used or not; and, further, that the provision of Act 318, Session Laws of Hawaii 1949, which provides for such "irregular" or "write-in ballot" is void but the remainder of the Act which provides for the use of voting machines is severable and valid.

The election laws in effect prior to the passing of Act 318, Session Laws of Hawaii 1949, show conclusively that under the provisions of the statute no write-in ballot was permissible except in case of a special election which is

covered by section 174 where a candidate may have died or withdrawn.

Pertinent parts of the election laws prior to the 1949 amendment are sections 204-212, Revised Laws of Hawaii 1945, which provide that all elections shall be by ballot and describe the size, content, etc., of the ballot.

Section 262 provides that all elective officers shall be nominated in accordance with chapter 7.

Section 263 provides: *"No person shall be a candidate for any election unless he shall have been nominated in the primary next prior thereto."* (Emphasis added.)

Section 265 provides that the name of no candidate shall be printed on any official ballot unless a nomination paper shall have been filed in his behalf as provided within the chapter.

Section 267 provides for the nomination of nonpartisan candidates and section 276 provides that any nonpartisan candidate receiving at least twenty per centum of the votes of registered voters cast at such primary shall be a candidate at the following election.

Section 222 provides for the method of marking a ballot, namely, with a black lead pencil in the right-hand square opposite the name of the candidate for whom he desires to vote.

Section 237 provides if a ballot contains any mark or symbol whereby it can be identified, or if the ballot in any way be contrary to the provisions of this chapter, such ballot and all its contents must be rejected.

Plaintiff makes no contention that a write-in ballot was, under the language of the statute, expressly permissible prior to this amendment of 1949, but that Act 318, Session Laws of Hawaii 1949, expressly gives the voter the right to vote an "irregular" or "write-in ballot," that is, to write in the name of a candidate not appearing on the official ballot and, further, that if this Act were

construed to apply only to those voting by voting machines it would be discriminatory and void; that to uphold the validity of the law the court must interpret Act 318 as giving such right to all voters voting whether by ballot or machine and that this is a necessary implication though not expressed.

An examination of Act 318 shows that under section 251.01 the term "irregular ballot" is thus defined: "The term 'irregular ballot' means a vote cast for a person whose name does not appear on the ballot." Section 251.14 provides: "Sec. 251.14. *Voting by irregular ballot.* In the event a voter desires to vote an irregular ballot, such person shall write the name of the person whom he desires to vote for on the roll of paper or other device designated on the voting machine for that purpose, and such irregular ballot shall be counted and included in the canvass officially made * * * ."

It will be noted that the title is *"An Act to Provide for the Use of Voting Machines in Elections, Amending Chapter 6* of the Revised Laws of Hawaii 1945, as amended, *by Adding Thereto A New Subtitle Pertaining To Voting Machines and Making an Appropriation Therefor;* Making Certain Acts a Misdemeanor or Felony, and Providing Penalties." (Emphasis added.)

The Act purports to cover two subjects, only one of which is mentioned in the title, which in no way intimates that the election laws are to be changed other than to permit the use of voting machines. Nowhere in the title is the subject of write-in ballots mentioned but, further, the title is positively misleading for it specifically states the amendment to the chapter (relating to elections) is *"* * * by Adding Thereto A New Subtitle Pertaining To Voting Machines and Making an Appropriation Therefor; * * *."* (Emphasis added.) Thus, it appears to violate section 45 of the Organic Act which provides: "That each law shall

embrace but one subject, which shall be expressed in its title." If the title to the amendment had been merely to amend chapter 6 relating to elections, there would be a much better argument for sustaining the law as this provision of the Organic Act should be liberally construed, particularly as to amendatory statutes. It is satisfied if provisions of the Act are naturally connected and expressed in a general way in the title — nor need all the provisions be referred to in the title — yet a sweeping change such as contended for, which would make radical changes in both the primary and election laws, should be included in the title to give proper notice to legislators and to the electorate at large. At least the title should not be so worded as to mislead by appearing to provide merely for the purpose and use of voting machines.

"The purpose of this provision is, first, to prevent *hodge-podge* or *logrolling* legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles give no intimation; and third, to apprise the people of proposed matters of legislation. See Cooley's Const. Limitations, p. 143." (*Hyman* v. *Kapena*, 7 Haw. 76, 77, 78.)

Clearly the Act as written would contravene the second and third purposes of section 45 of the Organic Act relative to the title of an Act.

That this Act did not apprise the legislature of the purported change in the primary law or give any intimation of permitting write-in ballots would appear not only from the words therein but from the report of the ways and means committee of the senate and the combined report of the committees of judiciary and finance of the house.

The senate report made no mention of write-in voting but in so far as it purports to modify the election laws is as follows: "This bill proposes the use of voting machines

in elections in the City and County of Honolulu. Voting machines would be selected by a Voting Machine Board. This board would also regulate their use."

In the house the pertinent portion of the joint report of the judiciary and finance committees in this regard is as follows: "This bill proposes the use of voting machines in territorial and city and county elections. It establishes a voting machine board composed of the Secretary of Hawaii, clerk of the City and County of Honolulu, Superintendent of Public Works, all of whom shall be ex officio members; and two additional members appointed by the Governor who shall not be members of the same political party. The voting machine board is authorized to make experiments, tests, and selection of suitable voting machines, and also to administer the custody and use thereof."

Also, the following appears in the report of the deputy attorney general on this bill to the governor: "This bill amends the election laws to provide for the use of voting machines and makes an appropriation of $12,500 for the purchase of a limited number of such machines to be installed in the larger precincts of the city and county of Honolulu." Obviously, the governor took the report of the attorney general and the secretary of Hawaii without personally examining the bill.

This bill was passed in the last few days of the legislative session when the calendar was crowded which probably accounts for overlooking the radical changes proposed in the primary and election laws.

Assuming that the part relating to write-in ballots is invalid and void because not contained in the title, that does not necessarily invalidate the remainder of the Act which is contained in the title. One part of an Act may be void and the other part valid. " '* * * Where, * * * a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless

all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. * * * If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. * * * If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other.' Cooley, Constitutional Limitations, 7 ed., pp. 246, 247. See also *Wellington, et al., Petitioners,* 16 Pick. 87, 95, 96; *People* v. *Briggs,* 50 N. Y. 553, 565, 566, 567." (*In re Acherley,* 19 Haw. 535, 542, 543.)

Though the Act in question purports to cover two subjects, that is, voting by machines and the purchase thereof and also write-in ballots, only one of these appears in the title. The purchase of voting machines and the authorization for their experimental use is shown in the title and is easily separable from and complete in itself without the other provisions which are not shown in the title. This portion, therefore, is valid.

As stated by the trial judge, the basic purpose of the legislature in passing the Act was to provide for the introduction and use of voting machines in the Territory and that remained operative and complete in itself even though the invalid portions providing for irregular ballots are stricken out. (Citing *In re Atcherley, supra.*)

The second and third questions presented by the complaint may be summarized as follows:

"That if a write-in or irregular ballot is cast by plaintiff or any other duly registered voter, would such ballot be

rejected either to the office for which it refers or the entire ballot under our law?"

This question is easily disposed of; assuming that such write-in or irregular ballot does not constitute an identifying mark or symbol contrary to paragraph 3 of section 237 of the Revised Laws of Hawaii, it would violate paragraph 5 of section 237 which provides that "If a ballot in any other way be contrary to the provisions of this chapter; *then such ballot and all it contains must be rejected.*" (Emphasis added.) See *Holstein* v. *Young*, 10 Haw. 216.

The judge below correctly held that prior to the passage of Act 318, Session Laws of Hawaii 1949, the voters were not authorized to make write-in ballots. He also found that section 251.14 of Act 318 providing for voting by write-in or irregular ballots prescribed different and special treatment for the registered voters in precincts using voting machines which was denied all other voters and thereby purported to grant special privileges and rights to the registered voters voting in precincts using voting machines while the same privilege and right is denied to all other registered voters of the Territory, and that such was a violation of section 55 of the Organic Act prohibiting the legislature from granting "to any corporation, association, or individual any special or exclusive privilege, immunity or franchise."

It is unnecessary to pass upon the reasons given by the judge below on whether section 251.14 amended by implication the election laws so as to grant the write-in privilege to electors of all precincts as the conclusion that no such privilege is granted is correct.

In addition to the provision for write-in ballots being void as a violation of section 45 of the Organic Act, it also is clear that there was no intent on the part of the legisla-

ture to grant such a privilege even though it comes within the wording of the statute.

This court has held on many occasions that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." In *Chang* v. *Meagher et als.,* 40 Haw. 96, 102, this court cites a number of decisions beginning with one of the earlier and most sweeping cases decided by the United States Supreme Court, *Holy Trinity Church* v. *United States,* 143 U. S. 457, from which the above quotation was taken. In the *Holy Trinity Church* case after reviewing the title of the Act, the evil which it was designed to remedy, the situation which existed at the time the Act was passed, the circumstances surrounding the appeal to the Congress, the reports to the committee of the House, etc., the court decided that though the wording covered the specific Acts forbidden and though the forbidden Act did not come within the specific exception set forth in the Act, the case was not within the purview of the statute.

The *Holy Trinity Church* case goes to an extreme in departing from the literal construction but it promulgated no new rule of statutory interpretation. Many years before this doctrine had been set forth by Chief Justice Taney in *Brewer v. Blougher,* 14 Peters 178, and there are numerous other decisions of the United States Supreme Court holding that a thing which is within the intention of the statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers.

As stated by *Jones* v. *Guaranty, etc., Co.,* 101 U. S. 622, "for the letter killeth, but the spirit giveth life." This doctrine has been applied even in criminal cases where strict construction is the usual rule.

We have no hesitancy in holding the legislature had no intent to grant write-in voting. To use the indicia set forth in the *Holy Trinity Church* case, *supra:* The title of the Act was to provide for voting machines and to make an appropriation for their purchase; the proponents of the Act were the secretary of Hawaii and the various county clerks who have general charge of elections and the counting of the votes; the situation to be cured was the large number of voters in certain precincts and the great amount of time necessary to count the ballots and the possibilities of error. The privilege to "write-in" a ballot would radically change both the primary and election laws; reports of both the house and the senate committees show that the intent was to provide for voting machines and if such a write-in privilege were granted to voters in the precincts where the voting machines were used it would be a discrimination that in itself would invalidate such privilege. All these negate the idea of a legislative intent to grant the privilege of write-in voting.

The contention of plaintiff is that a statute prohibiting the writing in of names of candidates whose names are not upon the official ballot is "unconstitutional" has considerable authority in some jurisdictions based upon the provisions of the respective state constitutions relative to the qualifications for voters, the right to vote and the right to hold office. (18 Am. Jur., Elections, § 191, p. 307.)

No claim is made that the Hawaiian statute violates any provision of the United States Constitution and obviously there is no provision in the Organic Act which is violated by an Act forbidding write-in ballots.

In the case of *Chamberlain* v. *Wood*, 15 S. D. 216, 88 N. W. 109, the decision holds that "The legislature may, by requiring the names of all candidates for office to be printed upon the official ballot, deny the right of voters to write on their ballots the names of candidates not

printed there." This case quotes with approval Judge Cooley, in his work on Constitutional Limitations, as follows: "Participation in the elective franchise is a privilege, rather than a right, and it is granted or denied upon grounds of general policy." It called attention to the fact that the state constitution does not prescribe any conditions or rules governing the exercise of the right to vote, and further, that the constitution does not prohibit the legislature from prescribing such rules, regulations and conditions as might be proper for the public interest. "The law-making power * * * has provided when, in what manner, and under what restrictions he [the elector] may exercise the right of suffrage, and in so doing has provided: 1. That he must exercise that right by using an official ballot; 2. That he must designate in the manner specified his choice of candidates whose names are upon the official ballot, and whose names can only be placed there by a compliance with the law; 3. It has, in effect, denied to the elector the right to write the name of a candidate for whom he desires to vote upon the official ballot, or otherwise deface the same, by declaring that 'no elector shall place any mark upon his ballot by which it may afterward be identified as the one voted by him.' " Again, it calls attention to the fact that an elector has the right to secure the printing of the name of his candidate upon the official ballot in the manner prescribed by law, namely, by nomination of some political party or by securing the signatures of twenty electors, in the case of a county office, to a certificate. "This may occasion the elector some inconvenience and labor, but these constitute no objection to the law."

Undoubtedly the legislature has the right to make reasonable regulations governing elections as long as there are no violations of any express provision of the Constitution or of the Organic Act. We cannot say that legislation

which permits nominations by political parties and nominations for legislative and county offices by fifteen qualified electors (for the office of delegate by twenty-five qualified electors) is an unreasonable regulation of the franchise. It is true that there are many States, perhaps a majority, which permit a write-in ballot. This may be highly desirable and exists in many communities; however, this is a matter of legislative discretion and not for the courts.

The judgment appealed from is affirmed.

*A. K. Trask* (also on the briefs) for plaintiff-appellant.

*C. R. Ashford,* Deputy Attorney General (*E. N. Sylva,* Attorney General, with him on the briefs), for defendants-appellees.