THELMA KAMANU, JOSEPH KAMANU, RODNEY KAMANU, YVONNE KAMANU, LLEWELLYN KAMANU, MATTHEW KAMANU AND NAOMI KAMANU, MINORS, BY THELMA KEMA KAMANU, THEIR NEXT FRIEND AND GUARDIAN AD LITEM, AND THELMA KEMA KAMANU, IN HER OWN RIGHT *v.* E. E. BLACK, LIMITED, A HAWAIIAN CORPORATION.

NO. 3023.

ARGUED FEBRUARY 15, 1956.                    DECIDED MAY 4, 1956.

TOWSE, C. J., STAINBACK AND RICE, JJ.
(Towse succeeded by Rice as C. J. at time of opinion.)

OPINION OF THE COURT BY STAINBACK, J.

The cause was argued and submitted to the full court. The term of one of the justices, in the interim, having expired and he having left the bench, it was stipulated by all parties that the case be decided and opinion rendered by the two remaining justices.

This is an action by the widow and minor children of

one Joseph Kamanu who was employed by the appellee in the construction of the Kalihi tunnel, a job which the appellee had undertaken by contract with the City and County of Honolulu. While Joseph Kamanu was so working on the tunnel as an employee of appellee, he was killed by a cave-in of the tunnel. It was alleged appellee was guilty of negligence in the construction of the tunnel and that it is liable to appellants for the loss of support, maintenance, society, companionship, guidance and paternal affection. The claim purports to be an "action for wrongful death under the common law of Hawaii." The appellant Thelma Kamanu claims $200,000 as the widow of the decedent; the remaining appellants claim $200,000 as the children of deceased; punitive damages in the sum of $100,000 are also prayed for in the complaint.

Appellee filed a motion to dismiss the complaint upon the ground that it fails to state a cause of action; the grounds for dismissal were that the rights of the appellants under chapter 77 of the Revised Laws of Hawaii, as amended, are exclusive and that claims for damages were barred by section 4406 of said chapter 77.

The court sustained the motion to dismiss.

This case presents two questions: (1) whether the widow and children had a common-law right of action for the wrongful death of the husband and father at "Hawaiian common law," and (2) whether such right by an employee, his dependents, etc., has been repealed by the Workmen's Compensation Act as against an employer for injuries arising out of and in the course of his employment.

It will be noted that while at English common law an action for wrongful death would not lie (*Baker* v. *Bolton et als.*, 1 Campbell's Rep. 494, cited in *Kake* v. *Horton,* 2 Haw. 209, 210) this was not true in Hawaii. (*Kake* v. *Horton, supra.*) In the *Kake* v. *Horton* case the court held that where a husband had come to his death by the wrong-

ful act of the defendant, the widow could maintain an action on the case to recover consequential damages resulting from the death.

In *Kake* v. *Horton, supra,* it was argued that the common law of England was in force in the Kingdom and that, therefore, the action could not be maintained in Hawaii. Our supreme court of the Kingdom of Hawaii said that this argument was not sound. "We do not regard the Common Law of England as being in force here *eo nomine* and as a whole. Its principles and provisions are in force so far as they have been expressly, or by necessary implication, incorporated into our laws by enactment of the Legislature; or have been adopted by the rulings of the Courts of Record; or have become a part of the common law of this Kingdom by universal usage; but no farther. The analogy sought to be set up between the Hawaiian Islands and the British Colonies in North America (now a part of the United States), with reference to the Common Law of England, is not, in our opinion, well sustained. We think the circumstances of the two countries are widely different."

The court at page 212 points out that under the Civil Code "in all civil matters where there is no express law, the Judges are bound to proceed and decide according to equity, applying necessary remedies to evils that are specifically contemplated by law, and conserving the cause of morals and good conscience. And, to decide equitably, an appeal is to be made to natural law and reason, or to received usage, and resort may also be had to the laws and usages of other countries. We think reason and natural justice are clearly in favor of permitting an action to be maintained, upon the grounds relied upon in this case, and upon a resort, for light, to the laws of those countries, to whose authority and opinions we yield the highest veneration, we find that the old harsh rule, which

had its origin in feudal times, has been superseded by liberal statutory provisions, more in accordance with justice and with the sentiments and circumstances of an enlightened age. As we are not fettered by the English Common Law rule on the subject, no legislative enactment is required to remove that obstacle to the maintenance of an action like the present in a Hawaiian Court, and we think it ought to be permitted, as being consonant with natural law and reason, as well as with the laws of civilized countries."

The court then cites with approval the Civil Law of France and Scotland where actions for wrongful death could be maintained and the court had "no hesitation in preferring the doctrine of the Civil Law to that of the English Common Law upon this point, for we conceive the former to be pre-eminently 'founded in justice.'"

The court, concluded "The principle which we now recognize will become, by judicial adoption, a valuable part of the Common Law of this Kingdom."

The next question is whether this common-law right of the widow and minor children was repealed by the provisions of the Workmen's Compensation Act as against an employer of an injured employee, his representatives and dependents.

After the definition of "employer," "workman," "industrial employment," "injury" or "personal injury," the Act provides, by section 4406, as follows:

*"Right to compensation exclusive;* * * * The rights and remedies herein granted to an employee on account of a personal injury for which he is entitled compensation under this chapter *shall exclude all other rights and remedies of the employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of the injury."* (Emphasis added.)

As noted, the statute defines dependents as including

children under eighteen years of age, or incapable of self-support and unmarried, whether ever actually dependent upon the deceased or not; the widow, if living with the deceased, or actually dependent, wholly or partially, upon him. (R. L. H. 1945, § 4412.)

It is argued that the intent of the statute is not to take away a common-law right but that it shall exclude only those claiming *through* the injured workman.

The language of the statute includes the widow and children in every situation wherein a workman is injured during the course of his employment. *"Right to compensation exclusive; * * * The rights and remedies herein granted to an employee * * * shall exclude all other rights and remedies of the employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of the injury."* (R. L. H. 1945, § 4406.) (Emphasis added.)

The argument is made, and this court has frequently held, that a statute taking away a common-law right will be strictly construed. (*Whitlow* v. *Jennings and Kaneshiro,* 40 Haw. 523.)

This court, as well as other authorities, has also frequently held that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." (*Chang* v. *Meagher et als.,* 40 Haw. 96; *Whitlow* v. *Jennings and Kaneshiro,* 40 Haw. 523; *Jensen* v. *Secretary of Hawaii, et als.,* 40 Haw. 604, 612.)

As stated in the syllabus of *Chang* v. *Meagher, supra:* "* * * frequently the purpose of an Act justifies a departure from the literal construction of the wording and a thing which is within the intention of the statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not

within the statute unless it be within the intention of the makers."

The language of section 4406, Revised Laws of Hawaii 1945, is clear and unambiguous as abrogating, except as to rights under the Workmen's Compensation Act, all rights that an employee and his dependents may have on account of personal injury, "all other rights and remedies of the employee, his personal representatives, *dependents, or next of kin, at common law or otherwise,* on account of the injury." (Emphasis added.) Clearly, the rights of the widow or the minor come within the letter of the statute excluding all other rights.

The next question, therefore, is: Although the letter of the statute does repeal the rights of the widow and dependents of an employee as against an employer, does such repeal come within the spirit and within the intention of the makers?

*Chang* v. *Meagher, supra,* held that the purpose of an Act justified a departure from the literal construction of the wording and that a thing which is within the intention of the statute is as much within the statute as if it were within the letter. A number of cases were discussed therein, beginning with the early case of the *Holy Trinity Church* v. *United States,* 143 U. S. 457, in which the Supreme Court of the United States held that it was justified in departing from the literal construction of a statute; this, even though the wording of the statute covered the specific acts forbidden and though the act did not come within the specific *exceptions* set forth in the Act. This case has been severely criticized because of the extent to which it went. As said in *Chang* v. *Meagher, supra,* the *case of the Holy Trinity Church* is now the leading federal case affirming "that words may be thus wrenched from their obvious meaning, when a court is satisfied by sufficient evidence that the framers of the act meant, not what

they said, but its opposite * * *." (*In Re Gardiner* [2 C. C. A.], 53 Fed. 1013, 1014.)

In construing a statute and deciding whether the court must in the situation before it follow the literal wording of the statute, the court may look to the history of a statute, the objects to be accomplished, the evils and mischiefs to be remedied, and it may examine the history of the passage of the Act, reports of committees, and the judicial construction acquiesced in for a long period of time.

The necessity for a Workmen's Compensation Act arose out of the development of the industrial revolution and the factory system with its sharp increases in industrial accidents and at the same time judicial decisions which decreased the employee's common-law remedy for his injury. In early primitive law there was a degree of responsibility to an injured workman by the employer. In the Laws of Henry I, there is a passage which may be translated: "And in some cases a man cannot legitimately swear that another was not, through himself, further from life and nearer to death; among which cases are these: If anyone, on the mission of another, is the cause of death in the course of the errand; if anyone sends for someone, and the latter is killed in coming; if anyone meets death having been called by another . . ." (*Leges Regis Henrici Primi, XC.*)

Likewise, in the early Germanic law, if a person lost his life in an employer's business while executing the order of the master, the master was taken as the *causa mortis*. The person accused of having had some responsibility for the death of another had to take the oath that the deceased was not, through him, further from life and nearer death.

Subsequent to the early English and German law of responsibility of the master for injury to the servant while on his master's business, there developed under the com-

mon law the doctrine of the liability of the master for injury to third persons caused by the act of the servant or employee in the master's business. This idea is embodied in the maxims *respondeat superior* and *qui facit per alium facit per se.* Legally, the act of the employee becomes the act of the employer, the individuality of the employee being identified with that of the employer.

There is an interesting article in 4 Harvard Law Review 345 by Mr. Justice Holmes who takes the doctrine back to the Roman law. Mr. Justice Holmes takes as a starting point the *patria potestas.* This was, in substance, the right of a third person to hold the master liable for the acts of members of his family or his slave, and the master, through the slave or family, had the right of possession of property or to enter into contracts. While the law undoubtedly started from the responsibility of the master for the acts of his slave or family, the acquisition of such rights and obligations was extended to the conduct of free servants. (See also Holmes, *The Common Law,* pages 16, 229-231.) The act of a servant was the act of the master as they were considered as one person.

This doctrine of *respondeat superior* had a firm foothold in England prior to 1700. (*Jones* v. *Hart* [1698], 2 Salk. 441.) In 1743 the statements of the *respondeat superior* rule were in sweeping and unqualified terms as "the act of a servant is the act of his master." (1 *Lord Raymond's Reports* 739; *Jones* v. *Hart, supra.*)

While logically there seemed to be no reason why the master should not be liable to his servant injured by the negligence of a fellow servant in the course of his business, yet there seem to be no decisions on this subject.

However, in 1837, after the industrial revolution where factories and machinery of all sorts were used in industry and transportation, Lord Abinger in the case of *Priestley* v. *Fowler,* 3 M. & W. 1, 150 Reprint 1030, invented the

fellow-servant exception to the general rule of a master's vicarious liability. In this case (*Priestley* v. *Fowler*) the master, a butcher, was held not liable for the negligence of his servant in overloading a conveyance which broke down as a result and injured the plaintiff, another employee. The substance of the reasoning for the decision is that the employee is as liable to be acquainted with any danger he faces in his work and is not bound to risk his safety but is free to do as he pleases, and by voluntarily undergoing the dangerous conditions of the work he cannot complain when an injury occurs as the result of these conditions even though the servant has nothing to do with selecting his fellow servants.

Long prior to this, contributory negligence was recognized as a defense even where direct negligence of the employer could be shown. (*Butterfield* v. *Forrester*, 11 East 60.)

Thus, as the needs of the workman increased for some form of protection, his rights were lessened by judicial decisions until finally the pendulum began to swing the other way where the legislatures and courts began to modify common-law defenses by the adoption of the "vice-principal" exception to the fellow-servant rule which, in substance, excluded from the fellow-servant category employees in a supervisory capacity and in some cases all fellow servants charged with carrying out the common-law duties of the employer such as providing a safe place to work, safe tools, etc., were held nondelegable; also, there were statutory modifications of contributory negligence to mitigation of damages. The number of so-called employers' liability statutes in the early days nearly restored the employee to a position of no worse than that of a stranger injured by the negligence of an employer or his servants.

Beginning with the Act of the Georgia legislature of 1855 abrogating the fellow-servant defense for railway

companies, numerous and other similar Acts cutting down defenses of the employer were enacted in some 25 States prior to enactment of any Workmen's Compensation Acts. Many of them abrogated the fellow-servant defense as to railways only, some abolished it all together, some destroyed the doctrine of the assumption of risk where the risk was caused by the fault of the employer, others destroyed it as to violations of safety statutes, so that so-called employers' liability statutes had to a slight extent restored the rights of employees.

However, studies made by various state commissions as to what injured employees actually received were indeed shocking. For example, the report of the New York Senate Committee for 1910 contains a tabulation of fatal industrial accidents. In the 74 cases in New York City in the year 1908 there was no compensation whatever in 43.2 per cent of the cases, compensation under $500 in 40.5 per cent, and only 16.3 per cent received between $500 and $5,000. Out of these awards there were, of course, attorney's fees, funeral and other expenses. Other studies in various States showed similar results.

This intolerable situation of the employee under the English and American common law and under the employers' liability statutes "impelled the English and American jurisdictions, steeped as they were in individualistic traditions, one by one to accept what must at the time have seemed a radical, indeed alien, and even socialistic, innovation." (1 Larson, *Workmen's Compensation Law,* § 5.10, pp. 32, 33.) For this innovation we must go to Germany, the origin of workmen's compensation laws.

Frederick the Great stated it was the duty of the State to provide sustenance and support for those of its citizens who could not provide sustenance for themselves and this was the socialistic doctrine of Germany's leading philosophers and statesmen as contrasted with the individual-

istic or *laissez-faire* doctrine of both England and America in the days of the industrial revolution.

As early as 1854 Prussia enacted a law making the railroads liable to their employees for accidents from all causes except an act of God and the negligence of the plaintiff, and in 1881 Bismarck laid before the Reichstag his far-reaching plan for compulsory insurance which was enacted into various measures between 1883 and 1887.

Because of the increase in industrial injuries and the lack of remedy for the employees, great interest was created in 1893 in America by an account of the German system of workmen's compensation written by John Graham Brooks and published in the Fourth Special Report of the Commissioner of Labor. Investigations were made by various state commissions from 1904 to 1910, in which year there also occurred a conference attended by representatives of all these state commissions at which time a Uniform Workmen's Compensation Law was drafted. This Act by no means became uniform, as the various States from time to time enacted their own particular Workmen's Compensation Acts beginning in 1902 with Maryland and ending in 1949 with Mississippi, the last State to come under such a system.

While the Acts of the 48 States and the several territories are by no means uniform, the Acts are generally in substance a form whereby an employee is entitled to certain benefits whenever he suffers a "personal injury by accident arising out of and in the course of employment"; (1) under such circumstances negligence of employee or employer are, to a large extent, immaterial in that the employee's contributory negligence does not lessen his rights and the employer's complete freedom from negligence or fault does not lessen his liability; (2) benefit to the employee includes cash wage benefits based on his average wage and include hospital and medical expenses;

(3) in case of death of employee, benefits for the dependents are provided ordinarily with arbitrary maximum and minimum limits; (4) employee and his dependents exchange for the assured benefits the common-law right to sue the employer for damages for any injury covered by the Act; (5) right to sue third persons who caused the injury remains; (6) the employer is required to assure his liability through private insurance, state insurance in some States, or self-insurance where permitted in certain States to certain qualified employers.

A proceeding under a Workmen's Compensation Act is not a tort action, as so many of the common-law trained judges and attorneys seem to think, and as the earliest New York decision (*Ives* v. *South Buffalo Railway Co.,* 201 N. Y. 271) held when it declared New York's first Workmen's Compensation Act unconstitutional on the ground that the imposition of liability without fault upon the employer was the taking of property without due process of law.

Later decisions hold that the Workmen's Compensation Act is constitutional, even those Acts that are compulsory and furnish no option to the parties as to whether they will operate under such Act. (58 Am. Jur., *Workmen's Compensation,* § 8, p. 580.) It is unnecessary to cite the numerous cases throughout the various jurisdictions for it has been practically uniformly held that the Workmen's Compensation Acts are authorized under the police power as furthering a sound public policy. (58 Am. Jur., *Workmen's Compensation,* § 9, p. 581.) Among the cases reasoning thus and sustaining the New York Act is the decision of the United States Supreme Court in *Ward & Gow* v. *Krinsky,* 259 U. S. 503, 512, 513, where it is stated:

"A sufficient vindication of compulsory Workmen's Compensation and Employers' Liability Acts, as it has seemed to this court, is found in the public interest of the

State in the lives and personal security of those who are under the protection of its laws; from which it follows that, when men are employed in hazardous occupations for gain, it is within the power of the State to charge the pecuniary losses arising from disabling or fatal personal injury, to some extent at least, against the industry after the manner of casualty insurance, instead of allowing them to rest where they may happen to fall — upon the particular injured employees or their dependents; and to this end to require that the employer * * * shall make or secure to be made such compensation as reasonably may be prescribed, to be paid in the event of the injury or death of one of those employed, instead of permitting the entire risk to be assumed by the individuals immediately affected."

Our own supreme court (*Anderson* v. *Hawaiian Dredging Co.*, 24 Haw. 97, and *Gunzaga* v. *Kaiwiki Sugar Co.*, 28 Haw. 383) has also sustained the constitutionality of our own territorial statute on the ground that it is a proper exercise of police power for the Territory.

Under the wording of most "exclusive-remedy" clauses, any common-law right of a husband to sue for his wife's services and consortium, or of a parent to sue for loss of a minor child's services, is barred. (2 Larson, *Workmen's Compensation Law*, § 66.00, p. 141.)

The text points out three types of "exclusive-liability" clauses: (1) the Massachusetts type, which only says that the employee, by coming within the Act, waives *his* common-law rights; (2) the California and Michigan type, which say that the employer's liability shall be "exclusive," or that he shall have "no other liability whatsoever"; and (3) the New York type, which carries this kind of statute one step further by specifying that the excluded actions include "those by 'such employee, his personal representatives, husband, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common

law or otherwise on account of such injury or death.'" (2 Larson, *Workmen's Compensation Law,* § 66.10, pp. 141, 142.)

"Under the second and third type of statute, which are the commonest type of exclusive remedy clause, the great majority of cases have barred suits both by husbands for loss of the wife's services and consortium, and by parents for loss of minor children's services." (2 Larson, *Workmen's Compensation Law,* § 66.20, pp. 142, 143.) It will be noted that even without the additional precaution of the list of third persons barred, the sweeping language used in describing the employer's liability indicates the legislative intent under which the decisions hold his liability as an employer is limited.

The Hawaii statute, it will be noted, belongs to the New York type as it specifically excludes not only the employee, but "his personal representatives, dependents, or next of kin * * *."

Statistics show that the greatest cause of accidents is by fault or negligence of the injured employee (German figures showing 28.89 per cent) while the negligenc of the employer ranks third in the cause of accidents, namely 16.81 per cent, so it is apparent that when the employee and his dependents give up their rights to sue the employer for negligence and accept in lieu thereof "exclusive remedy" under the Workmen's Compensation Act, they are obtaining a certainty for a highly speculative claim. Likewise, the employer who, when the case of his negligence can reach a jury was almost universally penalized with very high verdicts, gives up this chance for a most certain uniform liability to all injured employees whether the employer be negligent or not or whether the employee be contributorily negligent.

Setting aside the Massachusetts cases "as interpreting an unusual statutory clause, the rest of the cases leave an

impression of comparative accord and stability." (2 Larson, *Workmen's Compensation Law*, § 66.20 pp. 142, 144.)

The apparent exception is the recent case of *Hitaffer* v. *Argonne Company, Inc.*, 183 F. (2d) 811, certiorari denied 340 U. S. 852, 71 Sup. Ct. 80, which held that the wife did have a common-law action for the loss of her husband's consortium on the ground that the injury to the wife is a wrong independent of the injury to the husband. As the text points out, this case in citing its authorities confuses the right of subrogation by the third party sued by the injured employee under the statute permitting him to bring in the employer under the third-party practice; and the later federal cases point out the essence of the reasoning is that the third party's claim against the employer is not one for damages on account of injury but one for indemnity of express or implied promise to reimburse the third party. "The *Hitaffer* opinion fails to observe this decisive distinction. True, the federal cases cited stress that an employer by a single injury may violate two legal duties; but they do not say that in every such case his immunity extends to only one. What they do say is that the immunity does not affect the second breach of duty if that duty does not lead to a claim for 'damages on account of such injury.' The plaintiff's claim in the *Hitaffer* case was clearly for '*damages*', and the damages *were clearly 'on account of such injury'*. The court's statement that it is contrary to reason to suppose that the act cuts off independent rights of third persons ignores the entire line of cases discussed in this section, none of which was mentioned in the opinion." (2 Larson, *Workmen's Compensation Law*, § 66.20, pp. 142, 145.) (Emphasis added.) See also a discussion of this case in 36 Cornell Law Review 148.

The authorities practically unanimously sustain the contention that the Workmen's Compensation Act cuts off all common-law remedies that a wife might have against

the employer when the injury or death is compensable under the Workmen's Compensation Act.

In discussing the abrogation of the rights of action at law in injuries coming within the provisions of the Workmen's Compensation Law, the cases point out such is not a violation of a constitutional provision against depriving persons of their property without due process of law. "The certain remedy afforded by the compensation act is deemed to be a sufficient substitute for the doubtful right accorded by the common law." (58 Am. Jur., *Workmen's Compensation,* § 20, p. 588, citing *Holder* v. *Elms Hotel Co.,* 338 Mo. 857, 92 S. W. [2d] 620, and *Jensen* v. *Southern P. Co.,* 215 N. Y. 514, 109 N. E. 600.)

In *Jensen* v. *Southern P. Co., supra,* the court said: "To be sure, the compensation or recovery is limited * * * but if so, it is his contribution to an insurance scheme designed for his benefit, and may be justified on precisely the same grounds as the contribution exacted of the employer has been. When he enters into the contract of employment, he is now assured of a definite compensation for an accidental injury occurring with or without fault imputable to the employer, and is afforded a remedy, which is prompt, certain and inexpensive. In return for those benefits he is required to give up the doubtful privilege of having a jury assess his damages, a considerable part of which, if recovered at all after long delay, must go to pay expenses and lawyers' fees." (This case was reversed in 244 U. S. 205 on the ground that work performed by a stevedore on board a ship in unloading her at a wharf in navigable waters is maritime and the rights and liabilities arising from such work are within the admiralty jurisdiction and, therefore, an award of compensation made against a New York ship owner by the New York Workmen's Compensation Commission under the New York Act was in conflict with the

Constitution giving exclusive jurisdiction in admiralty to the Federal Government.)

*Milwaukee* v. *Miller*, 154 Wis. 652, sets forth the conditions giving rise to the law and the faults to be remedied, stating in substance that the court should be guided by the manifest intent of the law to eradicate the old system and to substitute in its place an entirely new one based on the obligations of industry to recognize accidents as one of the costs of production.

We do not deem it necessary to discuss the numerous authorities cited in Larson's *Workmen's Compensation Law,* American Jurisprudence, and other texts for, as stated *supra,* the authorities are practically unanimous to the effect that the Workmen's Compensation Act cuts off all common-law remedies that a wife might have against the employer of the husband when the accident occurs as a result of and during the course of employment. Suffice it to say that the history of the Act shows that the purpose is to substitute a definite compensation for accidental injury occurring with or without fault to the employee instead of the uncertainty of litigation; likewise, to give the employer a certain definite liability regardless of his negligence or lack of negligence, and not subject either party to the risk of law suits.

The wording of the Hawaii Act is clear and the intent is clear.

Although counsel for appellants has made a strong argument based on the doctrine that statutes repealing common-law rights are strictly construed, there is not evidence to justify this court to wrench words from their obvious meaning and conclude "that the framers of the act meant, not what they said, but its opposite." This conclusion is supported both by the wording of the Act and the history and purpose of Workmen's Compensation Acts, and .is further supported by a statute of the Territory

enacted in 1923 and now contained in section 10486, Revised Laws of Hawaii 1945, wherein the legislature gave the right to dependents where a death is caused by the wrongful act of another, but the statute specifically provides "* * * nothing in this section shall be construed as authorizing any action to be maintained hereunder against the employer of such decedent in any case where any dependent of the decedent has a remedy for compensation under the provisions of chapter 77. [Workmen's Compensation Law.]" This Act being in *pari materia* should be considered with the Workmen's Compensation Act to show the intent and policy of the legislature (2 Sutherland, *Statutory Construction*, §§ 5201, 5202, pp. 529-539) to limit claims against an employer to the remedy the dependents of a decedent have under the Workmen's Compensation Act.

The action of the trial judge is sustained and the appeal dismissed.

*Arthur K. Trask* (also on the briefs) for plaintiffs-appellants.

*J. Garner Anthony* and *Gilbert E. Cox* (*Robertson, Castle & Anthony* and *Smith, Wild Beebe & Cades* with them on the brief) for defendant-appellee.