889 P.2d 685

Carellyn SARANILLIO,
Plaintiff–Appellant,

v.

William L. SILVA; William L. Silva, Jr.;
and Geico Indemnity Insurance Compa-
ny, aka Geico Indemnity Company, aka
Government Employees Insurance Com-
pany, Defendants–Appellees.

Carellyn SARANILLIO,
Plaintiff–Appellant,

v.

JOLLY ROGER HAWAI'I, INC.,
Defendant–Appellee.

Nos. 17036, 17140.

Supreme Court of Hawai'i.

Feb. 7, 1995.

Reconsideration Denied March 6, 1995.

2

Robert A. Smith, Kaneohe, for plaintiff-appellant Carellyn Saranillio.

Jennifer M. Yusi of Rush Moore Craven Sutton Morry & Beh, Honolulu, for defendants-appellees William L. Silva, William L. Silva, Jr., and Geico Indem. Ins. Co., aka Geico Indem. Co., aka Government Employees Ins. Co.

J. Thomas Weber (Curtis E. Aldendifer and Gordon C.F. Chun with him on the brief), Honolulu, for defendant-appellee Jolly Roger Hawai'i Inc.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

These two appeals arise from the same underlying events, and their resolution depends on the same legal issues. We therefore consolidate them for decision.

In No. 17036, plaintiff-appellant Carellyn Saranillio brought an action against defendants-appellees William L. Silva, Jr. (Silva, Jr.), William L. Silva (Silva, Sr.) and GEICO Indemnity Insurance Co. (GEICO) for rescission of a general release agreement (the Release). The Release surrendered all claims Saranillio had against the Silvas and GEICO arising from a car accident involving her and Silva, Jr. In No. 17140, Saranillio filed a complaint against defendant-appellee Jolly Roger Hawaii, Inc. (Jolly Roger), alleging that it was vicariously liable for her injuries under the doctrine of *respondeat superior* because the accident occurred while Silva, Jr. was acting in the course and scope of his employment with Jolly Roger.

Saranillio's primary basis for seeking rescission of the Release was mutual mistake. She contended that when she signed the Release neither she nor the Silvas and GEICO were aware of the common law rule that the release of an employee automatically releases the employer from vicarious liability. She therefore claimed that their mistaken assumption that the release of Silva, Jr. would not bar a suit against Jolly Roger entitled her to rescind the Release.

Saranillio lost on summary judgment in both cases. In No. 17036, the circuit court ruled that the Release was not subject to rescission due to mutual mistake. In 17140, the circuit court ruled that the Release extended to Jolly Roger. Following the denial of motions for reconsideration in both cases, Saranillio appealed to this court.

For the reasons set forth below, we hold that the common law rule that the release of an employee automatically releases the employer from vicarious liability has been abrogated in Hawai'i by the adoption of our version of the Uniform Contribution Among Tortfeasors Act. *See* Hawai'i Revised Statutes (HRS) §§ 663–11 to 663–17 (1985 and Supp.1992). Because the common law rule does not bar Saranillio's suit against Jolly Roger, there was no mistake as to the legal effect of the Release. We therefore affirm the circuit court's order granting summary judgment in favor of the Silvas and GEICO in No. 17036. We also hold that the Release does not extend to Jolly Roger. We therefore vacate the order granting summary judgment in favor of Jolly Roger in No. 17140.

## I. *BACKGROUND*

On July 6, 1989, Saranillio and Silva, Jr. were involved in a motor vehicle accident in which Saranillio suffered serious injuries. Silva Jr. was driving his father's (Silva, Sr.) car. The car was insured by GEICO under a policy carrying a bodily injury liability limit of $35,000. GEICO assigned claims adjuster Charles Magda to the case. During the course of his investigation of the accident, Magda uncovered certain facts that led him to conclude that Saranillio could assert a claim against Jolly Roger, Silva, Jr.'s employer, based on the *respondeat superior* doctrine. Magda informed Saranillio's attorney of Jolly Roger's potential vicarious liability.

On May 11, 1990, Saranillio's attorney wrote to Magda, offering to settle for $35,-000. The letter referred to Silva Sr.'s "major exposure and major liability in this case" but did not mention Jolly Roger's potential liability.

On May 31, 1990, Magda telephoned Saranillio's attorney and informed him that he was sending a settlement check for $35,000, along with a release of liability form.

Saranillio signed the Release before a notary public on June 7, 1990, with her attorney and one other person acting as witnesses. The Release was a pre-printed general release form with blank spaces for pertinent information to be filled in. It was not a standard joint tortfeasor release. It stated that, in consideration of $35,000, Saranillio

> remise[d], release[d], and forever discharge[d] WILLIAM L. SILVA, WILLIAM SILVA, JR. AND GEICO INDEMNITY INSURANCE COMPANY, Releasee(s), successors and assigns, and/or his, her or their associates, heirs, executors and administrators, and all other persons, firms or corporations of and from any and every claim, demand, right or cause of action, of whatever kind or nature, on account of or in any way growing out of any and all personal injuries and consequences thereof, including, but not limited to, all causes of action preserved by the wrongful death statute applicable, any loss of services and consortium, any injuries which may exist but which at this time are unknown and unanticipated and which may develop at some time in the future, all unforeseen developments arising from known injuries, and any and all property damage resulting or to result from an accident that occurred on or about the 6th of July 1989 at or near FARRINGTON HWY, 3/10 MILE WEST OF MAIPALAOA, WAIANAE, HAWAII, and especially all liability arising out of said accident including, but not limited to, all liability for contribution and/or indemnity. AS A FURTHER CONSIDERATION FOR THE MAKING OF SAID SETTLEMENT AND PAYMENT, IT IS EXPRESSLY WARRANTED AND AGREED: THIS IS A RELEASE FOR GENERAL DAMAGES ONLY AND DOES NOT DUPLICATE NO FAULT BENEFITS ALREADY PAID.

The Release also contained the following language:

> I/we do hereby for myself/ourselves, my/our heirs, executors, administrators, successors, assigns and next of kin covenant to indemnify and save harmless the Releasee(s) from any and every claim or demand of every kind or character arising from said accident which may ever be asserted.

Of the above-quoted provisions, (i) the names of the "Releasees," Silva, Sr., Silva, Jr. and GEICO, (ii) the date and location of the accident, and (iii) the provision that the Release was for general damages only and that it did not duplicate no-fault benefits were typed in at Magda's direction.

In early 1992, Saranillio's attorney arranged for another attorney to act as his co-counsel, apparently to assist in preparing and prosecuting a lawsuit against Jolly Roger. Soon thereafter, the new attorney discovered that in addition to surrendering Saranillio's claims against the specifically named Releasees (*i.e.*, Silva, Sr., Silva Jr. and GEICO), the Release might also have extinguished Saranillio's claims against Jolly Roger. He determined that Saranillio's *respondeat superior* claim against Jolly Roger was potentially barred by the common law rule that a release of a negligent employee also serves to release his/her employer from vicarious liability. He also concluded that the suit against Jolly Roger was potentially barred because the Release expressly extended to "all other persons, firms or corporations" in addition to the named Releasees. That language arguably covered Jolly Roger.

After GEICO rejected a proposal to rescind the Release, Saranillio filed an action in the circuit court against the Silvas and GEICO, seeking an order declaring the Release "voidable and subject to rescission by reason of mistake in basic assumptions, mistake in integration, and misunderstanding." Several days later, on August 3, 1992, Saranillio filed a complaint in circuit court against Jolly Roger, alleging that it was vicariously liable for her injuries.

A. *Silva/GEICO Action (No. 17036)*

After attempts at settlement failed, the Silvas and GEICO filed a motion for summary judgment on January 6, 1993. Arguing that Saranillio's complaint was "frivolous," they contended that any claim that Saranillio was mistaken about the legal effect of the Release was untenable in light of the express language of the Release, which unambiguously released the Silvas and GEICO and "all other persons, firms or corporations of and from any and every claim" arising from the accident. That language, they argued, extended the Release to Jolly Roger. Because there was no dispute that at the time she signed the Release, Saranillio (through her attorney) was aware of the potential *respondeat superior* claim against Jolly Roger, the Silvas and GEICO argued that Saranillio could have reserved all claims against Jolly Roger, but chose not to do so. As a consequence, the Silvas and GEICO argued, Saranillio had no basis to rescind the Release.

On February 3, 1993, Saranillio filed an opposition to the Silvas' and GEICO's motion for summary judgment and a cross-motion for summary judgment. Saranillio primarily contended that despite the boiler plate language extending the Release to "all other persons, firms or corporations," neither Saranillio nor the Silvas and GEICO (acting through Magda) ever intended the Release to include Jolly Roger. Saranillio also claimed that they were unaware of the common law rule that the release of an employee serves to release an employer from vicarious liability. The mutual mistake as to the legal effect of the Release, Saranillio claimed, entitled her to rescind it.

Saranillio, however, had a problem in adducing evidence to prove the asserted mistake was mutual: she was unable to locate and depose Magda, who had retired from GEICO and apparently moved out of the country. In place of Magda's testimony, Saranillio offered her attorney's affidavit, in which he recounted certain statements Magda made to him suggesting that Magda did not intend for the Release to extend to Jolly Roger. Pursuant to Hawai'i Rules of Civil Procedure (HRCP) 56(f), Saranillio also requested a six month postponement of the hearing to enable her to locate and depose Magda.

The Silvas and GEICO filed a reply/opposition memorandum on February 8, 1993. Shifting away from the focus of the arguments that they made in their opening summary judgment memorandum, the Silvas and GEICO now argued that the effect of the Release on Saranillio's claims against Jolly Roger was "irrelevant." The Release, they argued, clearly covered the Silvas and GEICO, and any argument that it potentially

barred a suit against Jolly Roger was a question that should be addressed in the Jolly Roger action; it should not be the basis for rescinding a contract to release the claims against the Silvas and GEICO when the parties unquestionably intended that result. The Silvas and GEICO also questioned Saranillio's underlying assumption that the Release necessarily released her claims against Jolly Roger.

A hearing on the motions for summary judgment was held on February 10, 1993. Following arguments by counsel, the circuit court took the matter under advisement. On February 11, 1993, the court entered a minute order granting the Silvas' and GEICO's motion for summary judgment and denying Saranillio's cross-motion.

On March 5, 1993, before a written order on the summary judgment motions was entered, Saranillio located Magda, who apparently had returned to the United States. On March 8, 1993, Saranillio filed and served a motion for reconsideration, arguing that a rehearing was necessary to "complete the evidentiary record in this case on the issue of mutual mistake" with Magda's deposition testimony. The Silvas and GEICO opposed the motion primarily on the ground that Magda's testimony was unnecessary because Saranillio's attorney's affidavit had been sufficient to establish a genuine issue of material fact concerning mutual mistake. They argued, as they had on the motions for summary judgment, that mutual mistake as to the Release's preclusive effect on Saranillio's claims against Jolly Roger was not a basis to void the Release.

On March 10, 1993, the circuit court entered a written order granting the Silvas' and GEICO's motion for summary judgment and denying Saranillio's cross-motion. Final judgment in favor of the Silvas and GEICO was entered on March 23, 1993.

Magda was deposed on March 17, 1993. He essentially confirmed what Saranillio's attorney had declared in his affidavit. He testified, for instance, that he intended the Release to extend only to the Silvas and GEICO and not to Jolly Roger or anyone else.

On April 13, 1993, the circuit court held a hearing on Saranillio's motion for reconsideration. On April 21, 1993, the court entered a written order denying the motion.

On April 22, 1993, Saranillio filed a notice of appeal from the final judgment entered March 23, 1993 and the April 21, 1993 order denying her motion for reconsideration.

### B. *Jolly Roger Action (No. 17140)*

Jolly Roger moved for summary judgment on February 1, 1993. Stipulating for purposes of the motion that Silva, Jr. "was acting in the scope of his employment at the time of the accident," Jolly Roger argued that, by operation of the common law rule, the release of Silva, Jr. discharged it from any potential liability to Saranillio. Arguing that the issues presented by Jolly Roger's motion were "identical" to those in the Silva/GEICO action, Saranillio submitted the same opposition memorandum in response.

A hearing on the motion for summary judgment was held on February 19, 1993. At the end of the hearing, the court granted Jolly Roger's motion, stating that "the court will adhere to the majority rule which indicates that release of an employee also releases the employer." A written order was entered on March 12, 1993, and a final judgment was entered on March 29, 1993.

On March 19, 1993, on the basis of Magda's deposition testimony, Saranillio filed and served a motion for reconsideration of the order granting summary judgment. Following a hearing on April 21, 1993, the circuit court denied the motion. A written order was entered on May 14, 1993. On May 28, 1993, Saranillio filed a notice of appeal from the final judgment entered on March 29, 1993 and the order denying the motion for reconsideration.

### II. *STANDARD OF REVIEW*

"Review of an award of summary judgment is under the same standard applied by the circuit court and is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Ross v. Stouffer Hotel Co. (Hawai'i), Ltd.*, 76 Hawai'i 454,

457, 879 P.2d 1037, 1040 (1994) (citation omitted).

## III. *DISCUSSION*

### A. *Jurisdiction*

Before proceeding to the merits of the appeals, we consider, *sua sponte,* whether we have jurisdiction to hear the appeal in No. 17140. *See Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 499, 880 P.2d 169, 174 (1994).

Under Hawai'i Rules of Appellate Procedure (HRAP) 4(a)(1) (1985), a notice of appeal must be filed "within 30 days after the date of entry of the judgment or order appealed from." The circuit court entered final judgment in favor of Jolly Roger on March 29, 1993. Saranillio filed her notice of appeal on May 28, 1993. Therefore, under HRAP 4(a)(1), without more, Saranillio's notice of appeal would appear to be untimely, denying us jurisdiction to hear the appeal. *See Independence Mortgage Trust v. Glenn Constr. Corp.,* 57 Haw. 554, 555, 560 P.2d 488, 489 (1977) (per curiam) ("[i]t is well established that a timely filing of the notice of appeal is a prerequisite to this court's jurisdiction").

■ HRAP 4(a)(4), however, qualifies the operation of HRAP 4(a)(1) in cases where so-called "tolling" motions are made. It provides in pertinent part:

> If a timely motion under the [HRCP] ... is filed in the circuit ... court by any party: ... (iii) under [HRCP] Rule 59 ... to alter or amend the judgment ..., the time for appeal for all parties shall run from the entry of the order denying ... such motion.

On March 19, 1993, Saranillio filed a motion for reconsideration pursuant to HRCP 59(e), which was permissible as a motion to alter or amend the judgment. *See Gossinger v. Association of Apartment Owners of Regency of Ala Wai,* 73 Haw. 412, 425, 835 P.2d 627, 634 (1992). Because Saranillio's notice

of appeal was filed fourteen days after the entry of the order denying her motion for reconsideration, the notice would appear to be timely under HRAP 4(a)(4).

Again, however, there is a catch. HRAP 4(a)(4) expressly requires that the tolling motion be timely. HRCP 59(e) provides that "[a] motion to alter or amend the judgment shall be *served not later than 10 days after entry of the judgment.*" (Emphasis added.) Saranillio filed and served her motion for reconsideration on March 19, 1993, ten days *before* entry of the judgment from which she appeals. The question, then, is whether her motion was timely.[1]

■ We hold that it was. HRCP 59(e) does not require that a motion be served *after* the entry of judgment; it imposes only an outer time limit on the service of a motion to alter or amend the judgment, requiring that it be served "not later than 10 days after the entry of the judgment." A motion served before the judgment is entered falls within that time constraint. *Cf.* 6A *Moore's Federal Practice* § 58.05[2], at 58–61 to 58–62 (1993); 9 *Moore's Federal Practice* § 204.12[4], at 4–95 (1993) (tolling motions, including motions made under Federal Rules of Civil Procedure Rule 59, may be made either before or after the entry of judgment). Thus, we hold that Saranillio's motion for reconsideration, having been served ten days before the entry of the final judgment, was timely.

The only remaining question is whether Saranillio filed her notice of appeal within thirty days after the entry of the order denying the motion for reconsideration. Saranillio filed her notice of appeal on May 28, 1993, fourteen days after the circuit court entered the order denying the motion. However, the circuit court entered final judgment in favor of Jolly Roger on March 29, 1993. The entry of final judgment, coming while Saranillio's motion for reconsideration was pending, might be taken as an implicit denial of the

---

1. Although Saranillio's motion for reconsideration in No. 17036 was also filed before the entry of judgment, the timeliness of her notice of appeal in that case does not depend on whether the motion for reconsideration was timely. Saranillio filed her notice of appeal in No. 17036 within

thirty days of the entry of final judgment; thus, even if the motion for reconsideration were untimely and therefore did not toll the time for appeal, Saranillio's notice of appeal was still timely under HRAP 4(a)(1).

motion for reconsideration. If it were, the time for filing a notice of appeal would have commenced on March 29, 1993, and Saranillio's notice would therefore be untimely.

■ We recognize that there may be situations where a court specifically intends for the entry of a final judgment to operate as an implicit denial of a pending motion for reconsideration. HRAP 4(a)(4), however, assures parties that if they make a timely tolling motion, the time for appeal does not commence until "entry of the order denying" the motion. We think that a plain and fair reading of HRAP 4(a)(4) requires that the "order denying" the motion must specifically and expressly deny the tolling motion. Thus, under HRAP 4(a)(4), an implicit denial of a tolling motion, such as by the entry of a final judgment while a motion for reconsideration is pending, is insufficient to trigger the time for filing a notice of appeal.

■ The time for appeal in No. 17140 commenced on May 14, 1993, when the circuit court entered its order denying Saranillio's motion for reconsideration. Because Saranillio filed her notice of appeal on May 29, 1993, we hold that her appeal was timely and that we have jurisdiction to consider the appeal in No. 17140.

### B. *The Release*

Turning to the merits of the appeals, the Release poses two related problems for Saranillio. First, as she concedes, it potentially bars any lawsuit against Jolly Roger because of the common law rule that the release of an employee releases the employer from vicarious liability. Even if Saranillio can avoid the common law rule and pursue an action against Jolly Roger, she contends that it would be something of a hollow victory because the Release requires her to indemnify the Silvas and GEICO against any claim asserted against them in connection with the accident. Because Jolly Roger would have a claim for indemnity against Silva, Jr. if it were found liable to Saranillio under *respondeat superior, see Ah Sing v. McIntyre,* 7 Haw. 196, 198 (1887), Saranillio, in all likelihood, would simply end up returning any award obtained from Jolly Roger to Silva, Jr.

The Release, then, potentially bars an action by Saranillio against Jolly Roger in the first place, and even if it does not, it likely makes such a suit an exercise in futility. This "double indemnity" problem, as Saranillio calls it, explains the approach she has taken in these two appeals. It won't suffice for her simply to be able to sue Jolly Roger; she must be able to sue Jolly Roger without the specter of the indemnity clause looming at the end of a lawsuit. That effectively means that the Release must be voided. Thus, rather than arguing that the common law release rule does not apply in Hawai'i, Saranillio takes the position that it probably does and asserts that the parties were mutually mistaken about its effect. That enables Saranillio to argue that the Release is voidable.

In No. 17036, the Silvas and GEICO argue that even if the parties were wrong in assuming that the Release would not prevent Saranillio from suing Jolly Roger, that mistake was merely incidental to the fundamental bargain memorialized in the Release: the discharge of the Silvas and GEICO from all claims arising from the accident in exchange for $35,000. As to that bargain, they argue, it is uncontested that there was no mistake. Accordingly, they contend that any effect the Release might have on Saranillio's claims against Jolly Roger should not be a basis to rescind their otherwise valid contract; instead the legal effect of the Release should be resolved between Saranillio and Jolly Roger in their separate lawsuit. Secondarily, they argue that there is a good argument to be made that the common law rule does not apply in Hawai'i, thus undercutting the premise of Saranillio's claim of mistake.

In No. 17140, Jolly Roger argues that the common law rule applies in Hawai'i and therefore that Saranillio's release of Silva, Jr. released it from any potential vicarious liability. It also argues that even if the common law rule does not apply in Hawai'i, the Release still bars Saranillio's suit because, in addition to the Silvas and GEICO, it expressly extends to "all other persons, firms or corporations[.]" Thus, Jolly Roger takes the position that if the Release is declared valid in No. 17036, it extinguishes Jolly Roger's

liability, and the summary judgment in its favor should be affirmed. By the same token, it concedes that if the Release is rescinded in No. 17036, the summary judgment in its favor should be vacated.

The central issues on appeal, then, are whether Saranillio, on the one hand, and the Silvas and GEICO, on the other, were mistaken as to the legal effect of the Release and, if so, whether that mistake vitiates the Release. The resolution of those issues depends on whether the common law release rule applies in Hawai'i.

### 1. *The Common Law Release Rule and the Uniform Contribution Among Tortfeasors Act*

■ We begin with the general proposition that, unless the law provides otherwise, the common law applies in Hawai'i. Hawai'i Revised Statutes (HRS) § 1–1.[2] Under the common law, the release of an employee serves to release the employer from vicarious liability. *Theophelis v. Lansing General Hosp.*, 430 Mich. 473, 480, 424 N.W.2d 478, 481 (1988) (citations omitted). Thus, in the absence of some superseding law, the common law release rule applies in Hawai'i.

A number of courts have held that the Uniform Contribution Among Tortfeasors Act (UCATA), or statutes modeled thereon, supersedes or abrogates the common law rule. *See, e.g., Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916 (Alaska 1977); *Holve v. Draper*, 95 Idaho 193, 505 P.2d 1265 (1973); *Brady v. Prairie Material Sales, Inc.*, 190 Ill.App.3d 571, 137 Ill.Dec. 857, 546 N.E.2d 802 (1989); *Van Cleave v. Gamboni Constr. Co.*, 101 Nev. 524, 706 P.2d 845 (1985) (per curiam); *Chamberlain v. Town of Kingston*, 126 N.H. 553, 496 A.2d 337 (1985); *Yates v. New South Pizza, Ltd.*, 330 N.C. 790, 412 S.E.2d 666 (1992); *Smith v. Raparot*, 101 R.I. 565, 225 A.2d 666 (1967); *Krukiewicz v. Draper*, 725 P.2d 1349 (Utah 1986); *cf. Blackshear v. Clark*, 391 A.2d 747 (Del.1978) (holding that the release of an employer does

not release the negligent employee unless the release so provides); *Waters v. Hedberg*, 126 N.H. 546, 496 A.2d 333 (1985) (same).

Other courts have reached the opposite conclusion, holding that the UCATA does not abrogate the common law rule. *See, e.g., Bristow v. Griffitts Constr. Co.*, 140 Ill. App.3d 191, 94 Ill.Dec. 506, 488 N.E.2d 332 (1986); *Elias v. Unisys Corp.*, 410 Mass. 479, 573 N.E.2d 946 (1991); *Theophelis, supra; Horejsi v. Anderson*, 353 N.W.2d 316 (N.D. 1984); *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380 (1989); *Craven v. Lawson*, 534 S.W.2d 653 (Tenn.1976); *see generally* Annotation, *Release Of (Or Covenant Not To Sue) Master Or Principal As Affecting Liability of Servant For Tort, Or Vice Versa*, 92 A.L.R.2d 533 (1963).

Because Hawai'i has adopted a version of the UCATA, *see* HRS §§ 663–11 to 663–17, we review the relevant case law from other jurisdictions to aid us in our determination of whether the common law rule has been abrogated in Hawai'i.

There are two versions of the UCATA, the original version promulgated in 1939 by the National Conference of Commissioners of Uniform State Laws and the revised 1955 version. In 1941, Hawai'i adopted the 1939 version. 1941 Haw.Sess.L.Act 24, at 188–90.

### a. *The 1939 Version of the UCATA*

Section 4 of the 1939 version of the UCATA provides:

> **Release; Effect on Injured Person's Claim.**—A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be re-

---

**2.** HRS § 1–1 (1985) provides in pertinent part: The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawai['i]i in all cases, except as otherwise expressly provid-

ed by the Constitution or laws of the United States, or by the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage[.]

duced, if greater than the consideration paid.

1939 UCATA § 4, 12 U.L.A. 57–58 (1975).[3]

■ Section 4 was designed to abrogate the common law rule that the release of one joint tortfeasor released all other tortfeasors. *Smith,* 101 R.I. at 568, 225 A.2d at 667; *Holve,* 95 Idaho at 196, 505 P.2d at 1268. It clearly applies to joint tortfeasors as that term traditionally has been used; that is, it applies to "wrongdoers" who act in concert or concurrently. Traditionally, however, an employer was not considered a joint tortfeasor with his/her employee when the employer's liability was based on *respondeat superior. See Ah Sing,* 7 Haw. at 198 ("The tort is not a joint one. The master is not liable as if the acts were done by himself, but because the law makes him answerable."); 53 Am. Jur.2d *Master and Servant* § 408, at 416–18 (1970) ("it is generally recognized that where the liability of a master for a tort of his servant is based solely on the doctrine of respondeat superior, the master and the servant are not joint tortfeasors").

■ Under general principles of statutory construction, courts give words their ordinary meaning unless something in the statute requires a different interpretation. *Ross,* 76 Hawai'i at 461, 879 P.2d at 1044 (citations omitted). On its face, therefore, Section 4 would seem not to apply to vicariously liable parties because they are not ordinarily considered joint tortfeasors.

The 1939 version of the UCATA, however, does not define joint tortfeasors in the traditional sense. Section 1 provides that:

[f]or the purposes of this Act the term "joint tortfeasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

1939 UCATA § 1, 12 U.L.A. 57 (1975); HRS § 663–11 (1985) (same). As one court has said, section 1's definition of joint tortfeasors, which is based on liability rather than negligence, is "exceedingly broad and goes beyond the traditional meaning of the term." *Holve,* 95 Idaho at 195, 505 P.2d at 1267. A

number of courts have held that the definition encompasses an employer held liable under *respondeat superior,* because under section 1

[t]he *basis* of liability is not relevant, nor is the relationship among those liable for the tort. In short, it makes no difference whether the [employer's] liability is based on the doctrine of *respondeat superior* or any other legal concept. The point is that both it and the [employee] are (at least) "severally" liable for the same injury to the plaintiff. Therefore, the Uniform Contribution Among Tortfeasors Act applies.

*Blackshear,* 391 A.2d at 748 (emphasis in original); *accord Holve,* 95 Idaho at 195, 505 P.2d at 1267 ("the scope of the Act is determined by joint or several liability rather than joint or concurring negligence"); *Chilcote v. Von Der Ahe Van Lines,* 300 Md. 106, 113, 476 A.2d 204, 208 (1984) ("[t]hat definition [of joint tortfeasor] is broad enough to include a person liable solely by reason of *respondeat superior* "); *Smith,* 101 R.I. at 567, 225 A.2d at 667 ("[t]hat language is plain and unambiguous. It declares its own sensible meaning and leaves no room for judicial construction"); *Krukiewicz,* 725 P.2d at 1351–52; *see also Yates,* 330 N.C. at 793–94, 412 S.E.2d at 669.

As the Rhode Island Supreme Court said in *Smith:*

Emphasizing by the prefatory phrase— "For the purposes of this chapter"—that its sole concern was with the meaning of the term "joint tort-feasors" within the context of the act and not otherwise, the legislature continued and in plain and concise language fixed as the sole test for determining the existence of the joint tortfeasor relationship whether two or more persons were either jointly *or* severally liable in tort for the same injury to a party. Judged by that standard defendant [the master] and her servant were joint tortfeasors because concededly, upon the occurrence of the tort, they become jointly or severally liable to plaintiff.

101 R.I. at 567–68, 225 A.2d at 667 (emphasis in original). In the view of these courts,

---

**3.** HRS § 663–14 (Supp.1992) uses substantively identical language. *See* section III.B.1.c., *infra.*

then, because an employee and his/her vicariously liable employer fall within the UCATA's definition of joint tortfeasor, section 4's release provision applies. That is, the common law rule that the release of an employee automatically releases the employer is abrogated and the employer is released only if "the release so provides[.]"

Not all courts construing the 1939 version of the UCATA have concluded that it applies to situations involving vicarious liability. The Pennsylvania Supreme Court has held that an agent and its principal are not joint tortfeasors under the UCATA when the liability of the principal is derived vicariously, and thus the release of the agent precludes further recovery against the principal. *Mamalis*, 522 Pa. at 219–22, 560 A.2d at 1383–84. Acknowledging that the definition of joint tortfeasor in the UCATA might be read to encompass the principal/agent relationship, the court concluded that it could not "divorce the definition of joint tortfeasor from the context of the [UCATA] itself." *Id.* at 220, 560 A.2d at 1383. In its view, the UCATA served a purpose that was fundamentally distinct from the policies behind vicarious liability:

The rules of vicarious liability respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor. Upon a showing of agency, vicarious liability increases the likelihood that an injury will be compensated, by providing two funds from which a plaintiff may recover. If the ultimately responsible agent is unavailable or lacks the ability to pay, the innocent victim has recourse against the principal. If the agent is available or has means to pay, invocation of the doctrine is unnecessary because the injured party has a fund from which to recover.

The system of contribution among joint tortfeasors, of which the Uniform Act's apportionment rules are a key component, has arisen completely apart from the system of vicarious liability and indemnity and meets an entirely distinct problem: how to compensate an injury inflicted by the acts of more than one tortfeasor. Unlike the liability of a principal, the liability of a joint tortfeasor is direct (because the tortfeasor actually contributed to the plaintiff's injury) and divisible (since the conduct of at least one other also contributed to the injury).

*Id.* at 220–21, 560 A.2d at 1383 (quoting *Mamalis v. Atlas Van Lines, Inc.*, 364 Pa.Super. 360, 365–66, 528 A.2d 198, 200–01 (1987)); *see also Pallante v. Harcourt Brace Jovanovich, Inc.*, 427 Pa.Super. 371, 629 A.2d 146 (1993) (applying rationale of *Mamalis* and holding that release of vicariously liable principal operates to release agent); *Kinetics, Inc. v. El Paso Products Co.*, 99 N.M. 22, 28, 653 P.2d 522, 528 (Ct.App.1982) ("[b]ecause the respondeat superior form of vicarious liability is imposed upon one party through a legal fiction, the parties are not joint tortfeasors. If the parties are not joint tortfeasors, it is elementary that the Uniform Contribution Among Tortfeasors Act does not apply" (citations omitted)).

b. *The 1955 Version of the UCATA*

Courts seem to have a more difficult time concluding that the 1955 version of the UCATA covers vicarious liability, primarily because it does not use and therefore does not define the term "joint tortfeasor" (it uses "tortfeasors" instead).[4] Nevertheless, several courts have held that the 1955 version applies to "persons jointly or severally liable in tort for the same injury to person or property"[5] and, therefore, like the 1939 ver-

---

4. The replacement of "joint tortfeasor" with "tortfeasor" was intended to avoid confusion in those jurisdictions where persons who act independently and not in concert, as for example two colliding automobile drivers, cannot always be joined as defendants in the same action. In these jurisdictions, the tendency is to use "joint tortfeasors" to refer only to those who can be joined. The term is not indispensable to the Act, and the change in meaning might perhaps be confusing in those states.

Commissioners' Comment, subsection (a), 12 U.L.A. 64 (1975).

5. Section 1(a) of the 1955 version of the UCATA provides:

Except as otherwise provided in this Act, where *two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death*, there is a right of contribution among

sion, encompasses vicarious liability. *See Alaska Airlines,* 568 P.2d at 929–30; *Van Cleave,* 101 Nev. at 527, 706 P.2d at 847; *Yates,* 330 N.C. at 794, 412 S.E.2d at 669; *see also Krukiewicz,* 725 P.2d at 1352. These courts note that section 4 expressly applies to all "persons liable in tort":

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more *persons liable in tort* for the same injury or the same wrongful death:
>
> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide[.]

1955 UCATA § 4, 12 U.L.A. 98 (1975) (emphasis added); *see, e.g., Alaska Airlines,* 568 P.2d at 930 ("[i]t may be that Alaska Airlines is not technically a 'tortfeasor,' but it is 'one of two or more persons liable in tort for the same injury'"); *Yates,* 330 N.C. at 794, 412 S.E.2d at 669 ("[c]learly, both the master and the servant are 'persons liable in tort for the same injury,' and 'tortfeasors' as used in this provision refers to those persons liable in tort"); *Van Cleave,* 101 Nev. at 527–28, 706 P.2d at 847–48; *Waters,* 126 N.H. at 551–52, 496 A.2d at 337.

Several jurisdictions have reached the opposite result and hold that because the 1955 version of the UCATA eliminated the definition of joint tortfeasor, section 4 (or a statute substantially similar to section 4) does not abrogate the common law rule that the release of an employee releases a merely vicariously liable employer. *See, e.g., Bristow, supra; Elias, supra; Theophelis, supra; Craven, supra; Horejsi, supra.* These courts focus on section 4's use of "tortfeasors" and hold that because a tortfeasor traditionally has been defined as a wrongdoer, section 4 does not apply to vicariously liable employers. The analysis of the Illinois Court of Appeals in *Bristow* is representative:

> A tortfeasor has ... been defined as a "wrongdoer; one who commits or is guilty of a tort." (Black's Law Dictionary 135 (5th ed. 1979).) Under the doctrine of vicarious liability, an employer is held lia-

ble to a third party even when the employer is free from all fault. The doctrine is justified as a deliberate allocation of risk. The employer having engaged in a business and seeking to profit from it, is better able to foresee harm caused by the negligence of his [or her] employees and to insure against it than the innocent third party. (Prosser & Keeton, Torts sec. 69, at 499–501 (5th ed. 1984).) Thus, the employer is held liable as a matter of policy, but he [or she] is not a wrongdoer. The liability of the master and servant for the acts of the servant is deemed that of one tortfeasor and is a consolidated or unified one. The master, therefore, would not be "any of the other tortfeasors."

140 Ill.App.3d at 194, 94 Ill.Dec. at 509, 488 N.E.2d at 335 (citations omitted); *see also Elias,* 410 Mass. at 481, 573 N.E.2d at 947–48; *Theophelis,* 430 Mich. at 483, 424 N.W.2d at 483 ("[t]he principal, having committed no tortious act, is not a 'tortfeasor' as that term is commonly defined"); *Yates,* 330 N.C. at 798, 412 S.E.2d at 671 (Meyer, J., dissenting).

Echoing the rationale of *Mamalis,* courts holding that the 1955 version of the UCATA does not abrogate the common law rule contend that applying it to situations involving vicarious liability would "tend to obliterate the distinctions [between vicarious liability and contribution] and unsettle principles of well-established law." *Elias,* 410 Mass. at 483, 573 N.E.2d at 948. They also argue that it would be inconsistent with the basic purposes of the UCATA, which they say is designed to fairly apportion the payment of damages among joint *wrongdoers. See Bristow,* 140 Ill.App.3d at 198, 94 Ill.Dec. at 511–12, 488 N.E.2d at 337–38; *see also Yates,* 330 N.C. at 802–03, 412 S.E.2d at 674 (Meyer, J., dissenting).

### c. Abrogation of the Common Law Release Rule in Hawai'i

■ Hawai'i has adopted the original 1939 version of the UCATA. We agree with those jurisdictions holding that the plain and unambiguous language of the 1939 version

---

them even though judgment has not been recovered against all or any of them.

12 U.L.A. 63 (1975) (emphasis added).

abrogates the common law rule that the release of an employee automatically releases his/her vicariously liable employer.

Like section 1 of the original version of the UCATA, HRS § 663–11 defines "joint tortfeasors" to include "persons jointly or severally liable in tort for the same injury[.]" HRS § 663–14 tracks the language of section 4 of the 1939 version of the UCATA, providing:

> **Release; effect on injured person's claim.** A release by the injured person of joint tortfeasors or one joint tortfeasor, whether before or after judgment, shall not discharge the other tortfeasors unless the releases or release so provide; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the releases or release, or in any amount or proportion by which the releases or release provide that the total claim shall be reduced, if greater than the consideration paid.

HRS § 663–14 (Supp.1992).

■■■ Under the doctrine of *respondeat superior,* the employer and the employee share a common liability to the plaintiff. *See Reed v. City and County of Honolulu,* 76 Hawai'i 219, 227, 873 P.2d 98, 106 (1994); *Kamanu v. E.E. Black, Ltd.,* 41 Haw. 442, 449–50 (1956) ("[l]egally, the act of the employee becomes the act of the employer, the individuality of the employee being identified with the employer"); *Sampay v. Morton Salt Co.,* 395 So.2d 326, 328 (La.1981) ("[a]lthough the employer and the employee are not [common law] tortfeasors, they are nonetheless each obligated for the same thing—total reparation of the damages to the victim"). Under the plain language of HRS § 663–11, then, a vicariously liable employer is a joint tortfeasor with his/her employee, because "both [the employer] and the [employee] are (at least) 'severally' liable for the same injury[.]" *Blackshear,* 391 A.2d at 748; *see also Holve,* 95 Idaho at 195, 505 P.2d at 1267; *Smith,* 101 R.I. at 568, 225 A.2d at 667; *Krukiewicz,* 725 P.2d at 1351–52. That being so, the release of an employee does "not discharge the [employer] unless the . . . release so provide[s.]" HRS § 663–14. In other words, read literally, HRS §§ 663–11

and 663–14 abrogate the common law rule that the release of the employee serves to release the vicariously liable employer.

■■■ We are aware of the oft-stated rule that statutes in derogation of the common law are to be strictly construed. *Burns Int'l Security Services, Inc. v. Department of Transportation,* 66 Haw. 607, 611, 671 P.2d 446, 449 (1983). Nevertheless, where the language of a statute is plain, and a literal construction is consistent with the legislative purpose, we are constrained to give effect to the plain meaning of the statute, even if it results in the derogation of a common law rule. *Kamanu,* 41 Haw. at 459–60.

■■■ We would be justified in departing from the literal construction of the statute only if it produced a result that is absurd and unjust and obviously inconsistent with the purposes behind the UCATA. *See Ross,* 76 Hawai'i at 461, 879 P.2d at 1044. We recognize that some courts have ruled that applying the UCATA's release provision (HRS § 663–14) to vicariously liable parties undermines the UCATA's purpose of promoting settlement. They observe that the UCATA expressly preserves the right of indemnity. *See* 1939 UCATA § 6, 12 U.L.A. 58 (1975); 1955 UCATA § 1(f), 12 U.L.A. 64 (1975); HRS § 663–16 (1985) ("[t]his part does not impair any right of indemnity under existing law"). An employer held liable under *respondeat superior* is entitled to indemnification from its employee. *Ah Sing,* 7 Haw. at 198. Thus, it is argued that if the release of the employee does not release the employer, an employee could not completely buy his/her peace by settling with the plaintiff because he/she would remain subject to a claim for indemnification. *See Bristow,* 140 Ill.App.3d at 198, 94 Ill.Dec. at 512, 488 N.E.2d at 338; *Elias,* 410 Mass. at 483, 573 N.E.2d at 948–49; *Theophelis,* 430 Mich. at 489 n. 13, 424 N.W.2d at 485 n. 13. Because the employee's incentive to settle is diminished, a primary purpose of the UCATA is frustrated.

The argument, however, ignores the other half of the settlement equation—the plaintiff's willingness to settle. If UCATA's release provision does not apply to vicariously

liable parties, it stands to reason that at least some injured parties "would be reluctant to settle with the servant or agent, and thereby extinguish his [or her] cause of action against the master or principal, unless he [or she] could settle with the servant or agent for" full satisfaction (in which case the effect of the common law rule would be irrelevant). *Van Cleave*, 101 Nev. at 530, 706 P.2d at 849 (citation omitted).

Thus, the overall effect of abrogating the common law release rule on the parties' willingness to enter into partial settlements is uncertain; as a general proposition, it would seem to discourage negligent employees from settling but to encourage plaintiffs. We must assume that the legislature took those effects into account when it enacted Hawai'i's version of the UCATA, and it is not our prerogative to overrule the legislature's decision by ignoring the plain language of the statute.

Neither would we be justified in departing from the plain language of HRS §§ 663–11 and 663–14 on the ground that the abrogation of the common law rule is patently unfair or absurd. To the contrary, the elimination of the rule removes a trap that has ensnared many unwary plaintiffs (and their attorneys), leaving them to suffer the harsh consequence of foregoing full recovery for their injuries. And fairness to plaintiffs does not necessarily come at the expense of unfairness to defendants.

 Where the plaintiff releases a negligent employee, under the UCATA the employer remains vicariously liable—just as it would be if there had been no release. But the employer is not without means to limit or offset its remaining liability to the plaintiff. First, through the operation of HRS § 663–14, the claim against the employer is reduced by at least the amount of the consideration the employee paid for the release.[6] Second, the employer retains the right to seek indemnification from its employee. HRS § 663–16; *Ah Sing*, 7 Haw. at 198.[7]

True, the right of indemnity may be of little value in cases where, for instance, the employee is judgment proof or where the employer chooses not to pursue a claim against its employee. In such cases, the employer is held to answer for its employee's negligence merely because of its status and not because it participated in any tortious act. That, however, is a normal incident of—indeed, the intended consequence of—the long-established doctrine of *respondeat superior*, which is based on a deliberate and equitable policy of risk allocation.

As for the employee, he/she may remain exposed to a claim for indemnity after settling with the plaintiff. But, like an employer, the employee too can take steps to protect him/herself, to wit: a clause entitling him/her to indemnification from the plaintiff in the event that the employer seeks reimbursement for any amounts paid to the plaintiff (as the Release in the instant cases provides). Failing this self-protective measure, the employee might be spared from indemnifying his/her employer if the employer chooses not to seek reimbursement. *Yates*, 330 N.C. at 795, 412 S.E.2d at 670. Even if the employee is required to indemnify his/her employer, that result is not really unfair, given the employee's status as the actual tortfeasor. Neither is it inconsistent with

**6.** HRS § 663–14 permits the parties to a release to reduce the claim against the other tortfeasors "in any amount or proportion by which the ... release provide[s] that the total claim shall be reduced, if greater than the consideration paid." Where the release makes no specific provision concerning the amount or proportion by which the total claim is to be reduced, "the claim against the other tortfeasors [is reduced] in the amount of the consideration paid for the ... release[.]" The Release in the instant cases was not a standard joint tortfeasor release and therefore did not specifically provide for the amount or proportion by which the claim against Jolly Roger was to be reduced. Thus, assuming that Jolly Roger is found to be vicariously liable to

Saranillio, the claim against it should be reduced by the amount of the consideration paid for the Release, $35,000.

**7.** Although some courts argue that requiring the employer to seek indemnification from the employee results in an unnecessary "circuity of action," *see, e.g., Horejsi*, 353 N.W.2d at 320, we believe that "the remedial nature of [HRS § 663–14]—to encourage settlements and assure full compensation to the plaintiff for injuries—takes precedence over possible indemnity problems." *Theophelis*, 430 Mich. at 540, 424 N.W.2d at 508 (Archer, J., dissenting).

the UCATA's design to allocate the burden of recompensing an injured plaintiff according to proportionate fault.

■ Finally, in giving effect to the plain language of HRS §§ 663–11 and 663–14, we reject the argument that because the liability of the employer is completely derivative, the release of the employee must, as a matter of logic, serve to discharge the employer. *See Theophelis*, 430 Mich. at 491, 424 N.W.2d at 486 (making argument that UCATA "leav[es] in place the deep-rooted common-law principle that the release of [an agent] would discharge his principal. Any other result would be illogical and unjust because release of the agent removes the only basis for imputing liability to the principal."). We agree that "[t]his argument confuses a release with the theory of satisfaction." *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 807 (Tex.1980). "The fact that an employee has been released in a settlement has no bearing on the continued liability of the employer unless the settlement is in full satisfaction of the plaintiff's claims against both the employee and the employer." *Id.* (footnote omitted). Thus, while an adjudication acquitting an employee of liability should extinguish the liability of the employer, *id.* at n. 2, a release of claims against the employee does not necessarily require the same result.

In short, we hold that an employee and his/her vicariously liable employer are joint tortfeasors as defined by HRS § 663–11. Thus, under HRS § 663–14, the release of an employee does not release the employer "unless the ... release so provide[s.]" [8]

■ Our holding has two implications for the instant cases. First, Saranillio's argument that the Release is voidable due to mistake about the common law release rule is not tenable because the rule does not apply in Hawai'i. The only other ground that Saranillio offers for vitiating the Release is the provision requiring her to indemnify Silva,

Jr. if he is required to indemnify Jolly Roger; she suggests that this provision was included by mistake, rendering the Release voidable or, at least, subject to reformation. We reject that contention as being without merit. There being no valid basis for voiding or reforming the Release, we affirm the circuit court's award of summary judgment in favor of the Silvas and GEICO in No. 17036. [9]

Second, under HRS § 663–14, Jolly Roger is not released from any potential liability to Saranillio unless the Release "so provides." We now turn to that question.

### 2. *"All Other Persons, Firms, or Corporations"*

Jolly Roger argues that the Release expressly provides for its complete discharge from liability to Saranillio because in addition to specifically releasing the Silvas and GEICO, the Release expressly covers "all other persons, firms or corporations[.]"

Not unexpectedly, there is no consensus among the courts that have considered the effect of all-inclusive "all other persons" language under the UCATA. Generally, courts take one of three approaches. *See Sims v. Honda Motor Co., Ltd.*, 225 Conn. 401, 408, 623 A.2d 995, 999 (1993). Some have adopted a "flat bar" rule, giving "all other persons" language broad, literal effect and holding that it releases all potential joint tortfeasors even if they are not specifically named or identified in the release. *See, e.g., Douglas v. United States Tobacco Co.*, 670 F.2d 791, 794–95 (8th Cir.1982) (applying Arkansas law); *Ralkey v. Minnesota Mining and Mfg. Co.*, 63 Md.App. 515, 530, 492 A.2d 1358, 1366 (1985). "The 'flat bar' rule yields a broad construction of both the 'so provides' language of [section 4 of the UCATA] and the 'any and all' language of the release." *Sims*, 225 Conn. at 409, 623 A.2d at 999.

Other courts give "all other persons" provisions no effect, holding that a release cov-

---

8. HRS § 663–14 also applies in the obverse situation, *i.e.*, the release of a vicariously liable employer does not release its employee "unless the ... release so provide[s.]"

9. In light of our holding that there was no mistake as to the effect of the common law release rule, we reject Saranillio's arguments that the

circuit court abused its discretion in denying her motions for a continuance of the summary judgment hearing and for reconsideration of the order granting summary judgment, both of which concerned proof that the alleged mistake was mutual.

ers only those parties specifically named or identified in the release. *See, e.g., Moore v. Missouri Pacific R.R.*, 299 Ark. 232, 239–40, 773 S.W.2d 78, 81–82 (1989); *Alsup v. Firestone Tire & Rubber Co.*, 101 Ill.2d 196, 201, 77 Ill.Dec. 738, 741, 461 N.E.2d 361, 364 (1984); *Beck v. Cianchetti*, 1 Ohio St.3d 231, 234–35, 439 N.E.2d 417, 420 (1982); *Alaska Airlines, Inc.*, 568 P.2d at 929. "Courts adopting this rule generally hold that naming the released parties is not necessary if those parties are sufficiently described with terms such as 'employees' or 'the driver of the car.'" *Sims*, 225 Conn. at 410, 623 A.2d at 1000 (citations omitted).

Still other courts hold that a release discharges only those tortfeasors that the parties who bargained for the release intended to release. Under this view, parties not specifically named in the release are discharged only if extrinsic evidence establishes that the parties to the release intended to discharge them. *See, e.g., id.* at 412, 623 A.2d at 1001; *Cram v. Town of Northbridge*, 410 Mass. 800, 803, 575 N.E.2d 747, 749 (1991); *Hurt v. Leatherby Ins. Co.*, 380 So.2d 432, 433–34 (Fla.1980).

We believe that the second approach—that only those parties specifically named or otherwise clearly identified on the face of the release are discharged—is the most sensible approach and consistent with the purposes of the UCATA. In enacting the UCATA, particularly HRS § 663–14, the legislature clearly intended to abrogate the common law release rule, which often resulted in the unintended discharge of *all* joint tortfeasors, including those who were strangers to the release. Construing releases to discharge joint tortfeasors not specifically designated on the face of the release would, in many cases, effectively perpetuate the common law rule and therefore frustrate the purpose of the statute. *Alsup*, 101 Ill.2d at 201, 461 N.E.2d at 364; *Beck*, 1 Ohio St.3d at 234–35, 77 Ill.Dec. at 741, 439 N.E.2d at 420. In contrast, a construction of HRS § 663–14 requiring specific identification of joint tortfeasors as a condition precedent to their discharge will insure that the intention of the parties to a release is given effect and will significantly minimize the possibility that unwary parties will be misled as to the effect of a release. Moreover, this rule lends itself to fair play and easy application.

*Moore*, 299 Ark. at 240, 773 S.W.2d at 82 (citing *Young v. State*, 455 P.2d 889 (Alaska 1969)). Accordingly, we hold that the "so provides" language of HRS § 663–14 means that a release discharges only those parties designated by name or otherwise specifically identified or described on the face of the release.

In No. 17036, the Release does not name or otherwise specifically identify Jolly Roger. It therefore does not extend to Jolly Roger. Because neither the common law release rule nor the Release itself bars Saranillio from pursuing any claim against Jolly Roger, we vacate the circuit court's summary judgment in favor of Jolly Roger entered on March 29, 1993.

## IV. CONCLUSION

For the foregoing reasons: (1) in No. 17036, we affirm the entry of final judgment in favor of the defendants-appellees William L. Silva, William L. Silva, Jr. and GEICO Indemnity Insurance Co.; and (2) in No. 17140, we vacate the final judgment entered in favor of defendant-appellee Jolly Roger Hawai'i, Inc. and remand the case to the circuit court.

LEVINSON, Justice, concurring.

I concur fully in the holdings of the opinion of the court that: (1) "the common law rule that the release of an employee automatically releases the employer from vicarious liability has been abrogated in Hawai'i by the adoption of our version of the Uniform Contribution Among Tortfeasors Act [*i.e.*, HRS §§ 663–11 through 663–17 (1985 & Supp. 1992)]," opinion of the court at 4, 889 P.2d at 688; and (2) the general release agreement (the Release) surrendering all claims that Saranillio had against the Silvas and GEICO arising from the motor vehicle accident involving Saranillio and Silva, Jr. "does not extend to Jolly Roger"—Silva, Jr.'s employer. *Id.* at 4, 889 P.2d at 688. I write separately, however, in order to "expand the

majority's reasoning" on three points for the purpose of "driv[ing] home [the] point[s] to the bar [and] the trial courts." F. Coffin, *On Appeal* 227 (1994) (emphasis deleted).

Observing that "[a]n employer held liable under *respondeat superior* is entitled to indemnification from its employee," the opinion of the court notes that some courts have argued that

> if the release of the employee does not release the employer, an employee could not completely buy his/her peace by settling with the plaintiff because he/she would remain subject to a claim for indemnification. Because the employee's incentive to settle is diminished, a primary purpose of the UCATA is frustrated.

Opinion of the court at 13, 889 P.2d at 697 (citations omitted). The opinion of the court then counters that the

> argument, however, ignores the other half of the settlement equation—the plaintiff's willingness to settle. If UCATA's release provision does not apply to vicariously liable parties, it stands to reason that at least some injured parties would be reluctant to settle with the servant or agent, and thereby extinguish his or her cause of action against the master or principal, unless he or she could settle with the servant or agent for full satisfaction (in which case the effect of the common law rule would be irrelevant).

*Id.* at 13–14, 889 P.2d at 697–98 (citation omitted) (brackets and quotation marks deleted).

The argument ignores more, however, than "the other half of the equation—the plaintiff's willingness to settle." It ignores the equally important fact that HRS § 663–14 (Supp.1992) expressly *permits* a release to "provide" for the release of *any* enumerated joint tortfeasor, *including* a vicariously liable employer. Thus, in instances where plaintiffs, for any number of possible reasons, are "willing" to do so, they may contract selectively for the release of their claims against some joint tortfeasors and the retention of their claims against others.

In light of the foregoing, the suggestion of the opinion of the court, at 14, 889 P.2d at 698, that the abrogation of the common law release rule "would seem to discourage negligent employees from settling but to encourage plaintiffs," while no doubt accurate in some cases, is often insignificant. An insured but otherwise impecunious defendant-employee may have no reluctance to enter into a joint tortfeasor release that preserves, subject to the constraints of the Hawai'i UCATA, the plaintiff's claims against his or her vicariously liable employer. The matter before us is a perfect illustration. The record reflects that both Saranillio (the plaintiff) and Silva, Jr. (the settling joint tortfeasor)—through Magda—fully *intended* that Jolly Roger (the allegedly vicariously liable employer) *not* be released; had they intended the contrary, HRS § 663–14 would have permitted them expressly to release Jolly Roger. Thus, the abrogation of the common law release rule by the Hawai'i UCATA need not discourage negligent employees from settling tort claims against them.

Finally, the opinion of the court, at 14, 889 P.2d at 698, correctly notes that pursuant to HRS § 663–16 (1985), which provides that the Hawai'i UCATA "does not impair any right of indemnity under existing law," the employer "retains the right to seek indemnification from its employee." In this connection, the opinion of the court suggests philosophically that "[a]lthough some courts argue that requiring the employer to seek indemnification from the employee results in an unnecessary 'circularity of action,' we believe that the remedial nature of HRS § 663–14— to encourage settlement and assure full compensation to the plaintiff for injuries—takes precedence over possible indemnity problems." *Id.* at 14 n. 7, 889 P.2d at 698 n. 7 (citations omitted) (brackets and internal quotation marks deleted).

It is my experience that the "circularity of action" problem is more theoretical than real. After all, HRS § 663–14 provides in relevant part that a

> release by the injured person of joint tortfeasors or one joint tortfeasor ... reduces the [plaintiff's] claim against the other tortfeasors in the amount of the consider-

**18**

ation paid for the releases or release, or *in any amount or proportion by which the releases or release provide that the total claim shall be reduced, if greater than the consideration paid.*

(Emphasis added.) Accordingly, if, by agreement of the parties, a release reduces the plaintiff's claim against all *unreleased* joint tortfeasors by the greater of the amount of the consideration paid by the *released* tortfeasor or the *released* tortfeasor's proportionate responsibility for the plaintiff's total claim, then, by definition, there is no possibility that an *unreleased* tortfeasor could have a claim for indemnification against the settling *released* tortfeasor. This is the case because, by virtue of the contractual and proportionate reduction of the plaintiff's claim, an *unreleased* tortfeasor can never be liable to the plaintiff for any damages apportionable to the *released* tortfeasor. Obviously, a potentially settling tortfeasor always has the option of insisting on the full protections of HRS § 663–14. Whether a defendant-tortfeasor will choose to negotiate for these protections is a matter of his or her own cost-benefit analysis, although it is probably the rare defendant-tortfeasor who will not.

I recognize that, in the context of a vicariously liable employer—whose liability is of necessity coextensive with that of its tortfeasor-employee—a UCATA release that reduces the plaintiff's claims against all unreleased tortfeasors by the greater of the consideration paid by the released tortfeasor (*i.e.,* the settling employee) or the released tortfeasor's proportionate responsibility for the plaintiff's total claims will effectively eliminate any exposure to the plaintiff on the employer's part. But such would be the case under *either* the Hawai'i UCATA *or* the common law release rule.